HENRY C. OVERING, Appellant, *v.* FREDERICK W. FOOTE, Respondent.

MARY C. OVERING, Appellant, *v.* FREDERICK W. FOOTE, Respondent.

Under the statute providing for the assessment and collection of taxes (1 R. S., 398, § 7, *et seq.*), the assessment of a town or ward must be made out after the first day of July in each year, founded upon facts as to the residence and property of tax-payers as they existed on that day; it must be completed on the first day of August, but may be completed at any time between these two days. When completed, whether before the first day of August or on that day, notice thereof must forthwith be given as prescribed by the statute (§ 19, as amended by chap. 536, Laws of 1857, and chap. 110, Laws of 1858), and thereafter no further names or property can be added to the roll by the assessors, unless it may be that where the roll is completed and notice given prior to the first of August, and a mistake is discovered after such completion and before that day.

In such case, *it seems*, that the notice may be countermanded, the roll corrected and completed, and a new notice given on or before the first day of August.

On the fifteenth of July notice of the completion of an assessment roll was given. After that date the roll was examined by plaintiffs' agent. The names of plaintiffs did not appear thereon, or any memoranda of their property, or any thing to indicate that they were to be assessed. The agent was notified, however, by the assessors that they intended to assess them when the requisite information was obtained; against this he protested. Subsequently the names of plaintiffs and their property were entered upon the roll by the assessors, a tax laid by the board of supervisors, and real property of plaintiffs sold to pay the same. In actions to set aside the certificates of sale as clouds upon the title, *held* (EARL, C., dissenting), that the acts of the assessors in making such entries were illegal and the assessment and tax void; that after giving

public notice the assessors were not authorized to add the name of a party to the roll simply upon giving him verbal notice; and that the action was maintainable, as the facts showing the invalidity of title under the sheriff's certificate of sale do not appear upon the papers and cannot be shown, save by evidence *aliunde.*

The provisions of the act of 1865 (chap. 453, Laws of 1865), providing for the reassessment of omitted taxes of a former year, do not authorize this to be done without notice, or after the assessors have lost all power to add names or property to the assessment roll; it must be done before the roll is completed and notice given. (EARL, C., dissenting.)

*Overing* v. *Foote* (43 N. Y., 290) distinguished.

APPEALS from judgments of the General Term of the Supreme Court in the third judicial department, affirming judgments in favor of defendant, entered upon decisions of the court on trial without a jury.

These actions are alike in all respects, and were tried together as one. They were brought to set aside the certificates of sale of real estate made by the sheriff of the county of Delaware, as a cloud upon the plaintiffs' title.

The sales were had and the certificates made, as is alleged, by virtue of certain proceedings to levy a tax upon rents reserved in leases belonging to the plaintiffs. The cases have been twice tried and once considered upon appeal by the Court of Appeals. (43 N. Y., 290.) On the last trial here reviewed, the facts found are, in substance, as follows: The plaintiffs were non-residents of the county of Delaware, and during 1864 or 1865 were owners of the rents charged upon the lands mentioned in the complaints under leases in fee. In 1864, such rents reserved were attempted to be assessed to widow Henry Overing and James D. Overing, said James being then dead, but such taxes were not collected. In the year 1865, the three assessors of the town of Stamford, in Delaware county, where the lands referred to were situated, parceled out among themselves the districts of the town in which each assessor should make the preliminary assessment, and this they severally proceeded to do; and after this was finished, the assessors met at the town clerk's office, and the clerk wrote out the roll for them. They had collected the

data as to the taxable rents to be assessed to the plaintiffs, and
had agreed upon their values, and they were ready to be put
upon the roll, except they did not know but that some of the
lots had been sold on which the rents were reserved, and, for
a reason satisfactory to the assessors, had the clerk leave blanks
in the roll to insert the names of the Overings, and the rents,
etc., assessed to the plaintiffs in 1865, until they could procure
from their agent at Delhi a list of all the lands sold, and,
with this exception, the roll was completed, and the assessors
put up notices. In a day or two, the plaintiffs' agent (White)
called upon one of the assessors (Hillis) who had the roll, it
then being about the middle of July, and Hillis explained the
matter to White, and told him that the assessors were going
to put the assessment against the Overings on the roll for
rent as soon as they got a list of the sold lots. On the next
day, two of the assessors (Hillis and Nesbit) went to Delhi
and called upon White, and procured from him a list of lands
sold, and told him the assessors would put the Overings on
the roll for their assessments, deducting the amount of rents
for lots sold, and White protested and objecting against their
right to do so; "and they went home, and the board at once
did so." The board of assessors met on the day for swearing off,
and, after hearing those who applied, adjourned the further
hearing to the twenty-ninth of August, and after these Overing
assessments were inserted, and on the day last named, the roll
was duly sworn to. White, the plaintiffs' agent, resided in
Delhi, where the board of supervisors met. When White
called upon the assessors, he was told that the list of the assess-
ments for rents against the Overings were in the town clerk's
office, but had not been transcribed, and he claimed that it
was too late to put them on. After White had furnished the
list of lots sold, and was told that the assessments, except on
sold lots, would be inserted in the roll, he had no further
personal notice, and did not subsequently appear before the
board; but no assessment for rent was inserted by the board
for rent of any lot which White claimed had been sold.
From the year 1860 or 1861, the Overings had been, and in

1866, at the time of the sales complained of, were the owners of the rents charged upon the lands described in the complaints, and these rents upon durable leases in the town of Stamford, were omitted to be assessed, and were not in the assessment roll in the year 1864 as against the plaintiffs. 'It is further found that when the assessment roll was examined by White no Overing name — no entry of any of the lease lots in question — no amount of the plaintiffs' annual rent reserved, and no value of plaintiffs' personal property, and nothing indicating an intention to assess the plaintiffs — was upon the roll; and that after the roll was thus examined it was altered by adding the plaintiffs' names and assessment to it; and no notice, actual or constructive, except as before stated, was given plaintiffs, or their agent, of any time when or any place where the roll, as thus altered, would be left with one of the assessors for examination and correction; and the fact that the assessors had put the plaintiffs on the roll did not come to their knowledge, or the knowledge of their agent (except as before stated) until after the meeting of the board of supervisors of 1865 who laid the tax; and, except as qualified by the preceding findings of fact, the whole assessment was made, and the names of the plaintiffs and the property in question were put upon the roll after the roll was completed, and after notices given for correction, and after plaintiffs had examined the rolls pursuant to the notice and found no assessment therein. Upon these facts, the assessment and taxation were held valid in the court below, and the complaints were dismissed, with costs; and the plaintiffs appeal.

*Amasa J. Parker* for the appellants. The assessors obtained no jurisdiction to assess plaintiffs and the laying of the tax and all proceedings to enforce it were void. (*Clark* v. *Norton*, 49 N. Y., 243–248; *Bennett* v. *City of Buffalo*, 17 id., 383.) The whole assessment was irregular, defective and void. (Laws 1846, p. 446; Laws 1858, p. 600; 1 R. S. [5th ed.], 913; id., 909, 911; 3 Seld., 517; *People ex rel. Mygatt* v. *Bd. Suprs.*, 1 Kern., 563: *Mygatt* v. *Washburn*, 15 N. Y.,

316: *Whitney* v. *Thomas*, 23 id., 281: *Doughty* v. *Hope*, 3 Den., 594; *Bloom* v. *Burdick*, 1 Hill, 130, 141; *Wheeler* v. *Mills*, 40 Barb., 644; *Hubbell* v. *Weldon*, Sup. to H. & D., 139; *Sharp* v. *Spier*, 4 Hill, 76, 92; *Whitney* v. *Thomas*, 23 N. Y., 281; *People* v. *Chenango*, 1 Kern., 563; *Thacher* v. *Powell*, 6 Wheat., 119; *Williams* v. *Peyton*, 4 id., 77; *Cook* v. *Shepard*, 7 Cow., 88; *Watson* v. *Esty*, 7 Wend., 148; *Atkins* v. *Kinnan*, 20 id., 241; *Dawson* v. *Gill*, 1 East, 64; *Hardman* v. *Bowen*, 39 N. Y., 196.) The assessors had no right to put plaintiffs' names on the roll if omitted the preceding year. (Laws 1865, chap. 453, p. 818; *Bennett* v. *City of Buffalo*, 17 N. Y., 383; 42 Barb., 288; 22 N. Y., 281.) The certificate of sale was a cloud upon plaintiffs' title. (3 R. S. [5th ed.], §§ 78, 79; *Scott* v. *Underdonk*, 14 N. Y., 9; 5 Paige, 493; 6 id., 262; *Craft* v. *Merrill*, 14 N. Y., 456; 16 id., 519; *Simeon* v. *Schenck*, 29 id., 598; *Van Rensselaer* v. *Hays*, 19 id., 68; 18 id., 515.)

*William Gleason* for the respondent. This action was not maintainable upon the complaint or the proofs. (14 N. Y., 534; 43 id., 290; 34 id., 480; 43 Barb., 239; 8 Abb. Dig., 130; 1 id., 593; 2 N. Y., 118; 16 id., 519; 26 Wend., 132; 3 Keyes, 182; 15 How. Pr., 151; 8 Abb. Pr., 11.) The proceedings of the assessors and board of supervisors were not void. (*Swift* v. *City of Poughkeepsie*, 37 N. Y., 511; *Foster* v. *Van Wyck*, 4 Abb. Pr. [N. S.], 469; 3 Comst., 468; 48 Barb., 52; 19 id., 23; 47 id., 321; 10 id., 290; 21 id., 207; 35 N. Y., 463; 43 id., 184; 40 id., 154; 39 id., 88; 48 id., 393; *Barhyte* v. *Shepherd*, 35 id., 238; 1 Den., 214; *People* v. *Cook*, 8 N. Y., 69.) The assessment, taxation, warrant and sale were, in all respects, legal for the omitted property of 1864. (48 N. Y., 391; 17 id., 383; 43 id., 294; 31 id., 290; *People* v. *Suprs. Niagara*, 4 Hill, 20.) Plaintiffs' remedy was by writ of error or certiorari to have the assessment roll corrected. (37 N. Y., 511; 4 Abb. Pr. [N. S.], 469; 3 Tr. App., 196; 35 N. Y., 238; 5 id., 376; *Bk. of Comm.* v. *Mayor, etc.*, 43 id., 186; *Weaver* v. *Devendorf*, 3

Den., 120; *Prosser* v. *Secor*, 5 Barb., 607; *Vail* v. *Owen*, 19 id., 22; *Easton* v. *Calendar*, 11 Wend., 90; *Mygatt* v. *Washburn*, 11 N. Y., 563; *Randall* v. *Smith*, 1 Den., 214; *Hill* v. *Sillick*, 21 Barb., 207; *People* v. *Cook*, 14 id., 259, 290.)

Reynolds, C.   Upon a comparison of the facts assumed by the learned judge who delivered the opinion of the Court of Appeals in these cases, in 43 New York, 290, with the facts now found by the learned judge before whom the last trial was had, there is, in some particulars, a different state of facts presented, which it is claimed changes their legal aspect.   For example, Peckham, J., said (43 N. Y., 297): "Here the name of the plaintiff was on the roll, but the particular rents for which alone he was to be assessed were not carried out but his agent furnished to the assessors a list of the lots from which the rents accrued for the purpose of assessment."   It now appears that no list of lots for assessment and taxation was furnished by the plaintiffs or their agent, but he did furnish a list of lots sold which do not appear in the assessment roll and protested against the names of the Overings being put upon the roll, or that they be, in any form, assessed for taxation.

It is also found that when the notice to the tax-payers had been posted and when the assessment roll was examined by the plaintiffs' agent there appeared on it "no Overing name, no entry of any of the lease lots in question, no amounts of plaintiffs' annual rents reserved and no value of plaintiffs' personal property, and nothing indicating an intention to assess the plaintiffs was upon the roll;" and, further, that "the whole assessment was made and the name of the plaintiff and the property in question were put upon the roll after the roll was completed and after notices given for correction, and after the plaintiff had examined the rolls pursuant to the notice and found no assessment thereon."

The opinion of the Court of Appeals in these cases before referred to was apparently controlled by supposed facts not now in the case, for it is said (p. 297): "Under the facts of

this case we think the assessment roll was not completed, as to this plaintiff, until the assessors had inserted in the blanks left for that purpose the particular rents assessed," but proceeds to add that the plaintiffs' agent saw the roll about the middle of July and the blanks were filled within two days afterwards, and that then it was complete as against the plaintiffs, and that the previous notice of the assessment might be regarded as put on and running from that time as against the plaintiffs; and then it is further said, as before stated, that the plaintiffs' names were on the roll and that only the particular rents for which they were to be assessed were not carried out, and that the list for assessment was duly furnished by the plaintiffs' agent upon which the assessors, as if by the consent of the plaintiffs, acted. Upon this supposed condition of the fact we might not disagree in this respect with the rule of law there declared, but as a very different state of the fact in this respect is now presented we may consider the case *res nova*.

The proceedings of town assessors are of the greatest consequence to every tax-payer of the State, and they are defined by statute with reasonable precision in most particulars at least. That their duties have been fearfully abused or violated, either by ignorance or design, is a fact known and acknowledged by every intelligent citizen of the State, and such things have been ordinarily done with comparative impunity, so far as any relief is to be had in the courts. There is great authority for saying now that they must obey the rule of the statute or their acts are void, and give no exemption from personal liability, and their void action can confer no right, whether the result of ignorance or design. (*The Nat. Bk. of Chemung* v. *The City of Elmira*, 53 N. Y., 49.) The general theory under our laws for taxation of property is, that the citizen to be affected must have some sort of notice of the proceeding to be had against his property, and that, in some form, he may be heard, if wrong is apprehended, before any portion of his estate is seized for the support of the government; and I think all our laws for the assessment of property for the purposes of taxation are founded upon this notion of justice.

The town assessors are, therefore, required "between the first days of May and July in each year * * * to proceed to ascertain, by diligent inquiry, the names of all the taxable inhabitants in their respective towns or wards, and, also, all the taxable property, real or personal, within the same." (1 R. S., 390, § 8.) And they are required to make an assessment roll in which names, amounts and values are to be specially stated. The words of the statute are clear, and the decision of the courts of the highest authority is, that these duties prescribed by law must be strictly observed (*Clark* v. *Norton*, 49 N. Y., 243); and that the assessment roll for the current year, containing the names of the persons to be assessed, and the amount and nature of the property to be assessed, must be, in one sense, determined upon by the assessors on or before the first day of July in each year. It is very clear that they cannot extend the time for the performance of this duty without assuming the functions of the legislature any more than they can enlarge their powers in other respects. It is probably the rule of the statute that the determination of the names of the persons who are to be assessed, and the property to be assessed, must be made on or before the first day of July, and on that day the assessment roll for the year must be regarded as completed in the sense that no additional names or property can thereafter be added. During the months of May and June, they are to "ascertain, by diligent inquiry, the names of the taxable inhabitants" in their towns or wards, and for this purpose are authorized to divide the town into as many convenient districts as there are assessors. (1 R. S., 390, §§ 7, 8.) They are then allowed until the first day of August to complete and copy the assessment roll; after which they are to give notice that on the third Tuesday of August they will review their assessments, and that parties aggrieved can be heard.

In *Mygatt* v. *Washburn* (15 N. Y., 316, 319), DENIO, Ch. J., says : " The period for ascertaining the names of the taxpaying persons it is thus seen includes the months of May and June, and is limited to those months." And the same

learned judge, in the same case, further says (p. 320): "Evidently, there must be some day in the course of the proceeding in which the assessment may be said to be made. The fixing of this day cannot depend upon the degree of diligence with which assessors perform their duties, for in that case it would be different in different towns. * * * In my opinion, the assessment should be considered as made at the expiration of the time limited for making the inquiry, namely, on the first of July. If there is any change of residence or property after that day, it does not affect the assessment roll. The inquiries are then completed. Any changes which the assessors are authorized to make after that time are such as may be required to correct mistakes. No earlier day can be assumed, because what is done by one or all of the assessors prior to the first of July is inchoate and preparatory, and liable to be altered according to their final judgment in the matter. When the statute speaks of the time 'when the assessment is made' it refers to the binding and conclusive act which designates the tax-payers and the amount of taxable property. If I am correct in what has been said, it follows that the time referred to in the statute is the first of July. It cannot be an earlier or a later day without involving incongruities which we cannot suppose that the legislature would have permitted to exist."

The case of *Clark* v. *Norton* (49 N. Y., 243) obviously proceeded upon the idea that the assessment, as to names of tax-payers and property to be assessed, must be determined upon by the first of July and completed, and a fair copy made and left with one of the assessors by the first of August, when the required notice is to be given, and a right of examination and review until and on the third Tuesday of August, when the assessors are required to meet and hear complaints. All the cases, so far as I have discovered, agree that the assessment must be made upon the condition of facts as they exist on the first of July, but exactly what may be done by the assessors in respect to "completing" the assessment roll between the first of July and the first of August is a question of more difficulty,

and in respect to which there does not appear to exist entire unanimity of opinion among the most learned of our judges. In the case of *Clark* v. *Norton* (*supra*) the facts presented were that during the months of May and June, and until the 6th of July, 1868, the plaintiff resided in the town of Canton on a farm, the greater portion of which was in that town, and upon the assessment roll as completed for that year by the defendants, who were the assessors, the farm was assessed to the plaintiff for $2,750. The roll was completed before the first day of August and a copy left with one of the defendants, and notice given according to the statute that the assessors would meet to review the assessment on the third Tuesday of August. The plaintiff, on the 6th of July, 1868, sold his farm to one Fowler, delivered the deed on the eighth, took possession on the ninth, and removed from the town. When the deed was delivered the plaintiff took from Fowler an agreement to pay the taxes thereon for the year 1868. On the eighteenth of August, the day of review, the assessors, on the application of Fowler, changed the assessment roll as first made by assessing Fowler for the same, and also assessing the plaintiff for $2,750 for personal property. The roll thus altered went to the supervisors and a tax levied and collected by a sale of the plaintiff's property, and the action was brought against the assessors for this alleged wrong, and the plaintiff recovered. ALLEN, J., in speaking of the action of the assessors upon this state of facts, says (p. 247); "But they could not lawfully, during the time given for a review and a revision of the assessments as made, place upon the roll other property, or essentially or materially change the roll by adding to the assessment of individuals other property, especially by assessing for property acquired after the time limited for the preparation of the roll. To add names to the roll after the deposit for examination, or to change the character and amount of property by which individuals are assessed, is to deprive the party affected of the benefit of the notice required by statute, and the opportunity to apply for correction which the legislature designed all persons should have

and which the persons named in the original roll have in respect to the property appearing on such original roll as assessed to them. (*Bennett* v. *City of Buffalo*, 17 N. Y., 383.) The change made by the defendants in the assessment roll in August was entirely without authority, and the assessment of the plaintiff for the personal property was erroneous, and the act was not judicial in its character. This would be so, even if. the plaintiff had been properly taxable for the personal property. The duty of the assessors had been fully performed when the assessment roll was completed, except in the matter of review of the assessment as made and as permitted by the statute." It is very obvious, I think, that this case affirms no principle other than that taxation for a given year must depend upon the condition of things existing on the first day of July, and that after the first of August, where all agree the assessment roll must be completed, it cannot be altered by adding new names or additional or different property, but what may be done in the month of July by the assessors is a question of more difficulty. It may also be said that the case of *Mygatt* v. *Washburn* (*supra*) really decided nothing other than that assessments for taxation must proceed upon the state of things actually existing on the first of July. In that case it appeared that the plaintiff was a resident of Oxford, Chenango county, until the 25th of May, 1846, when he removed to Oswego. On the nineteenth of May, while he was still residing in Oxford, one of the assessors called upon him, took down his name, and put $10,000 opposite to it as his personal property, and of this he was informed. On the first of July following the assessors met to make out the assessment roll, which they completed within two days, with the name of the plaintiff as assessed for taxation for $10,000 of personal property. It seems to have been unquestioned that the assessment in that case was made after the first of July, before which time the plaintiff had ceased to be a resident of the town of Oxford and had become a resident of Oswego. The case in fact only decides that a party who ceases to be a resident of a town before the first of July in any year cannot be taxed in

that year for personal property for the reason that the assessment must be founded upon facts existing on the first of July, and in respect to the completion of the assessment BROWN, J., says in that case : " I entertain no doubt but that the day on which the assessment roll was signed, certified and delivered to the supervisors was the completion of the assessment which forms the ground of action." (P. 318.) With great respect to that learned judge, I think the remark quoted has no support in the statute or in any reported case with which I am acquainted.

The case of *Mygatt* v. *Washburn* came before the Court of Appeals earlier and in another form in the *People* v. *Supervisors of Chenango* (11 N. Y., 563). In the case as then presented to the court after referring to the statute requiring diligent inquiry to be made between the first days of May and July of the names of all the taxable inhabitants within the town and all the taxable property, real and personal, PARKER, J., speaking for the court, says : " It was for the purpose of making such inquiry that Washburn called upon Mygatt at the time mentioned, and the statute seems to imply, by giving the assessors till the first of July to make such inquiries, that the assessment is not to be made until after that time. After giving such time it proceeds, in the next section, to require that they, the assessors, shall prepare an assessment roll and prescribes the form of it and what it shall contain. It subsequently requires that such assessment roll shall be completed on or before the first of August. The assessment roll is thus to be made out between the first of July and the first of August. That roll is the assessment which may afterwards be reviewed or corrected in the manner prescribed by the subsequent provisions of the statute.

"All that is done by the several assessors in taking down names and entering descriptions and amounts in their respective districts previous to the first of July, is merely the obtaining of information preliminary to the assessment to be made when all the assessors meet in July, and correct and alter such memoranda when they make out the assessment roll."

I think this reference to reported cases and extracts from the opinions of different judges at least tends to show that exactly what can be properly done by assessors in making out and completing an assessment roll between the first day of July and the first day of August, has not been very clearly decided.

It appears to me that it was intended by the statute that the assessors should have the months of May and June to make the requisite inquiry and examination necessary to the preparation of the assessment roll required by the statute. This roll cannot be prepared until after the first of July, for up to that day tax-payers of the town may change their residence or the title to, and the characters of, their taxable property, and the assessment roll to be thereafter made must be founded on the state of the facts as to the tax-payer's residence and property as it existed on the first day of July, and in this sense only is the assessment to be regarded as made on that day. The assessment roll is to be thereafter prepared from information previously obtained and completed, and a copy made and left with one of their number on or before the first day of August, when the notice of its completion and of other facts required by the nineteenth and twentieth sections of the Revised Statutes, as amended, must forthwith be given for the information of all persons interested in or to be affected by the assessment. This roll must be completed on the first day of August, but may be at any time between the first day July and the first day of August. But when completed, whether before the first of August or on that day, notice of the fact must be forthwith given as the statute prescribes, and after that I am of opinion that no further names and no other property can be added to the roll by the assessors, unless perhaps it may be that where the roll is supposed to have been completed before the first of August, and notice given, an error in the roll should be discovered the notice might be countermanded, the roll corrected and completed before the first of August and a new notice on that day given which would answer the requirements of the statute. In this case the assessment is supposed to have been completed about the mid-

dle of July, 1865, and the requisite notice of its completion forthwith duly given. After that date the roll thus supposed to have been completed was examined by the agent of the plaintiffs, and it is found as a fact that the roll did not contain any "Overing name," or any memorandum of their property or any thing to indicate that they were to be assessed, and that after that time the n ames of the plaintiffs and their property were put upon the roll by the assessors, and by reason thereof the tax was laid by the supervisors and the property of the plaintiffs sold. It is quite true that the agent of the plaintiffs was told by one or more of the assessors that they at some future time, and as soon as Mr. Nesbit, one of their number, could get the requisite information, intended to assess the Overings precisely as they afterwards did do, but I do not regard this circumstance of the slightest importance. The assessors must conform to the statutes, and they cannot evade or violate their provisions by notice or contract, verbal or otherwise. They were required to complete the assessment roll and give notice, and this they did or pretended to do. It is now said the notice was false as the roll was not then complete. If so they violated their duty and were liable to all · the penalties prescribed by the statute. If they afterwards undertook to add names and property to the roll to the prejudice of any tax-payer, their acts were simply void. It would be quite intolerable if, after having given public notice that the roll was completed, they could, by verbal notice to any party, keep on, from time to time, adding names to the roll. There must be a period when, for obvious reasons of policy, the assessment roll for a town or ward, in any given year, must be regarded as complete, and the duties of assessors in that respect ended. I think in this case, upon the facts as found, the action of the assessors in assessing the plaintiffs' property was wholly without authority of law and void. If this view is correct the plaintiffs' action was maintained, for the facts showing the invalidity of the title under the sheriff's certificate of sale do not appear upon the paper and cannot be shown, except by evidence *aliunde.*

· In respect to the reassessment in 1865 of the alleged omitted taxes of 1864 against the plaintiffs, I am unable to see how its legality can for a moment be maintained. It appears from the report of these cases in 43 New York, the learned judge giving the opinion regarded them as having been properly made under chapter 453 of the Laws of 1865, but I think, upon the facts of the case as now presented, the question is fairly open to further consideration. It must, I think, be presumed that the act was passed by the legislature with some reference to the existing laws with respect to the assessment of property for the purpose of taxation, and one of the cardinal principles which underlies the whole system is, that the person whose property is to be thus affected must have some form of notice, and a chance to be heard if wrong be threatened or done. (*Bennett* v. *City of Buffalo*, 17 N. Y., 383; *Clark* v. *Norton*, 49 id., 243; *Wheeler* v. *Mills*, 40 Barb., 644.) We have seen that the assessment for 1865 was void for the reason that the plaintiffs' names were put upon the roll after notice had been given of its completion after the middle of July; and the reassessment for 1864 was not put on until on or after the fifteenth of August, upon the petition of aggrieved tax-payers dated on that day. I find nothing in the act of 1865 which requires any special notice to be given of the reassessment of omitted taxes for the previous year, or any special provision for the hearing of any party aggrieved. The act says that " whenever it shall appear to the assessors " that an omission mentioned in the act has been made, they may assess the omitted property for the then current year, but I cannot suppose it was intended that this might be done without some form of notice, and as none is provided for in the act, some reference was intended to be had to the general laws relating to that subject. It was obviously contemplated that the petition in such cases must be presented when the assessors had power to put the names of tax-payers upon the roll for the current year, and not after they had lost all power to amend the assessment roll by adding names or property of any kind whatever. I therefore conclude that this attempted assessment was also void.

If these views are correct, it is not necessary to consider any other questions in the case, and a new trial must be granted, with costs to abide the event.

All concur, except EARL, C., dissenting, he claiming that the case is controlled by the former decision reported in 43 New York, 290.

Judgments reversed and new trials granted.