Matter of Deering.

---

In the Matter of the Petition of JAMES DEERING to vacate an Assessment.

(Decided December 20th, 1886.)

In a proceeding to vacate an assessment for street improvements in the City of New York, it appeared that the work had been completed before the passage of the act of June 9th, 1880, providing that "all officers charged with any duty connected with the imposition or confirmation of assessments for local improvements in the City of New York, are hereby directed so to perform such duty that assessments for all local improvements heretofore completed, shall be finally passed upon by the board for the revision and correction of assessments, pursuant to the provisions of law relating to assessments in said city, within six months after the passage of this act" (L. 1880 c. 550), but that the assessment was not completed within the six months prescribed. *Held,* that the assessment was not thereby rendered void, in view of the provision of the consolidation act that "no assessments . . . shall hereafter be vacated or set aside . . . for or by reason of the omission of any officer to perform any duty imposed upon him, except in cases in which fraud shall be shown, and in cases of repavement (§ 899); and because the act of 1880 was not mandatory, but directory merely.

It also appeared that, while the work was finished in 1872, and the assessment was not confirmed until 1885, there had been a controversy litigated between the city and the contractor as to the amount due for the work, which was not settled until 1881, at which time a question arose and was litigated as to the amount of interest which should

be included, and after the decision of this question, certificates of the amount were issued, and within ten months thereafter the assessment was confirmed. *Held*, that the delay would not invalidate the assessment, no fraud or substantial error being shown.

The refusal of the board of revision and correction of assessment lists of the city to hear objections to an assessment going only to the amount of the certificate, as that the expense of the work is extravagant, or that the assessment upon the objectors'. lots exceeds a fair and just appropriation of the work done, or that the work was not submitted to competent bidding, is not good ground for vacating the assessment. So also as to the objections that the price paid for the work was enhanced by the necessity of protecting the Croton aqueduct from injury, or that part of the cost of the improvement was not assessed upon a railroad company, the statute requiring the cost to be assessed among " the owners or occupants of all houses and lots intended to be benefited " (L. 1813 c. 86 § 175).

The assessors, in computing the amount of the assessment for the work of grading, repaving, etc., Tenth Avenue, were authorized to include interest on instalments to pay the contractors to a time sixty days after the date of the certificate, as provided by act of 1880 (L. 1880 c. 556 § 5). The ordinance of 1854, founded on the act of 1852, requiring the contractor to be charged with interest on sums advanced upon final payments upon his contract, fell with the repeal of the act of 1852 by the law of 1880.

APPEAL from an order of this court denying a petition to vacate an assessment.

The proceeding was brought under chapter 338, Laws of 1858, as amended by chapter 312, Laws of 1874, and section 898 of the Consolidation Act, to vacate an assessment for regulating, grading, setting curb and gutter-stones, and flagging Tenth Avenue, from Manhattan Street to One Hundred and Fifty-fifth Street in the City of New York.

The facts are stated in the opinion.

*James A. Deering*, for appellant.

*G. L. Sterling*, for respondent.

BOOKSTAVER, J. — The appellant contends the assessment is wholly void on two grounds :

1st. Because not completed before December 9th, 1880; and

2d. Because it was not made within a reasonable and proper time after the completion of the work.

The first contention is based upon chapter 550, Laws of 1880, which provides: " All officers charged with any duty connected with the imposition or confirmation of assessments for local improvements in the City of New York, are hereby directed so to perform such duty that assessments for all local improvements heretofore completed, shall be finally passed upon by the board for the revision and correction of assessments, pursuant to the provisions of law relating to assessments in said city, within six months after the passage of this act."

The act was passed June 9th, 1880. The work to pay for which the assessment under consideration was imposed, was completed on or before December 28th, 1872, and the learned counsel for the appellant contends that the statute is mandatory; and that the assessment, not having been completed before December 9th, 1880, as required by that statute, is void.

To this, we think, there are two answers. Section 899 of the Consolidation Act provides: "No assessments . . . shall hereafter be vacated or set aside . . . for or by reason of the omission of any officer to perform any duty imposed upon him . . . except only in cases in which fraud shall be shown and in cases of repavement." This, in our judgment, prevents the effect sought to be given to the act of 1880 by the appellant.

We also think the statute is not mandatory, but directory merely. The statute itself directs the officers charged with the duty of imposing and confirming assessments, to so perform such duty that assessments shall be finally passed upon within six months after the passage of the act. It does not provide any penalty if the officers neglect their duty in this respect, nor does it declare that their acts shall be void if done after the six months. Nor is this statute the source of the power or authority to levy assessments;

for it expressly says the officers shall do this, "pursuant to the provisions of law relating to assessments," then existing.

Where the provision of the statute is the essence of the thing required to be done, and by which jurisdiction to do it is obtained, it is mandatory; where it relates to form and manner, and where an act is incident or after jurisdiction has been obtained, it is directory (Sedgwick on Construction of Statutes, 316 et seq.; Potter's Dwarris on Statutes, p. 222, note).

In *Clark* v. *Norton* (49 N. Y. 243), and *Overing* v. *Foote*, (65 N. Y. 263), cited by appellant, the assessors neglected to comply with the act giving them jurisdiction; and of course their acts, being without jurisdiction, were void. But in the case under consideration, power and jurisdiction to make the assessment were given by other statutes, and these, while giving the power to assess, also provided for the protection of the rights of all parties interested; this statute does nothing of the kind. The court, in *Marsh* v. *Chesnut* (14 Ill. 223), refers to this distinction, and bases its decision against the validity of the tax on it, holding that the object of such statutes is to give time, to a party objecting, to be heard. In the case before that court the taxpayer would have been deprived of this constitutional right, if the tax had been held valid.

We think the case of *Stevenson* v. *The Mayor*, etc. (1 Hun 51), entirely in point. In that case the statute provided: "It shall be the duty of the counsel to the corporation, in said city, within three months from the passage of this act, to take the necessary legal means to open as a street the said extension of Madison Avenue." The proceedings were not taken within three months, but were afterwards. The street was opened, and an assessment therefor laid on the lands of the plaintiff, who made the same claim that the appellant does here. The court held the statute directory and the assessment good; and we think the reasoning in that case conclusive. Many other authorities in support of the view we have taken might be cited.

The second contention of the appellant is based upon the length of time which elapsed between the completion of the work and the making of the assessment.

As before stated, the work was finished on or before December 28th, 1872. The assessment was not confirmed until November 12th, 1885, or nearly thirteen years after the work was done. After such a length of time, the appellant claims there is no power in the corporation to make the assessment, and that any assessment for that work is barred.

The learned counsel for the appellant does not rely upon any statute other than the one before mentioned, to sustain his contention; and it is manifest the various limitations to actions in courts of law cannot apply.

He must then base his contention upon general principles of equity.

But we think it exceedingly doubtful whether such principles can be invoked in this proceeding, which is brought under section 898 of the Consolidation Act. Such proceedings must be based upon allegations of fraud or substantial error. We do not think mere delay in making the assessment constitutes fraud, nor is it a substantial error within the meaning of the statute; and hence, we are of the opinion that the appellant has not brought himself within any of the cases in which the court has power to vacate or reduce the assessment on this ground.

If, however, equity principles are to be applied to this case, then, while it is true, equity will not entertain stale or antiquated demands, nor encourage laches and negligence, still it will interfere in many cases, to prevent the bar of the statutes which would be inequitable or unjust (Story Eq. Jurisp. § 1521).

We think appellant's position inequitable. He does not claim that the work was done at extravagant prices, nor that he has been charged with more than the value of the improvement to his property which he owned at the time the work was done; but admits the work has been done, the property benefited; the city has paid for the work, and

that he has paid no part of it; but claims, that because he was not compelled to pay as soon as he might have been, he ought not to be compelled to pay at all.

Many causes conspired to produce the delay. Before the final payment to the contractor, John L. Brown, a dispute arose between him and the city, as to the amount to be paid under the contract. He claimed a balance of $140,842.57, which was resisted by the city, and it was successful in the court below; but the judgment of that court was reversed in the Court of Appeals, and a new trial granted. This controversy continued until May, 1876, when, the contractor having died, it was settled by the city agreeing to pay $80,000 to Brown's representatives. The last payment, under this compromise, was not made until July, 1877. After this payment had been made, a Mr. Witherell, claiming to have been a partner of the contractor, endeavored to be substituted as plaintiff in the action so settled, and asked leave to serve a supplemental answer setting up that he was not concluded by the compromise, and that the city owed him money under the contract. This motion was denied in October, 1880; but an appeal was taken from the order, which was not dismissed until May, 1881. About the time the Witherell motion was denied, and on the 8th of October, 1880, the commissioner of public works certified to the board of assessors, the amount of expense incurred for the improvement. A question then arose as to the amount of interest which should be included in the certificate, and the settlement of this question occupied some time. Finally, and on the 14th of January, 1884, an amended certificate was given, and the interest certificate was given on the 6th of February, 1884. These constituted the authority for the assessors to act; not until these were given, could they act. We think the assessors, after the giving of the certificates, acted with reasonable diligence.

The appellant, on the argument, practically conceded that the comptroller and commissioner of public works, whose duty it was to give the certificates above mentioned,

rightly refused to give them pending the litigation with Brown, but claims that, after the settlement of that action, the amount assessable was fixed, and the certificates should have been issued. But if it was right to withhold them pending the Brown controversy, we do not see why they should have been issued pending the Witherell claim, for until that was so far determined as to leave no reasonable doubt as to its invalidity, the amount to be paid on the contract could not be finally determined.

The learned counsel for the appellant contends that since the settlement of the Brown controversy, the ownership of the lots affected by this assessment has been changed several times over, and that these owners have assumed the assessment had been paid long before they became purchasers, and that to compel them to pay for the work now, would be unjust. We fail to understand why the purchasers, since the settlement, should have made this assumption, rather than those who purchased before the settlement, or why either class should have made the assumption at all, when the improvement was patent to all who saw the lots, and when it could have been easily ascertained by proper inquiry, whether the assessment had been made and paid. If they failed to make this inquiry, they, under the circumstances, should suffer, and not the city. But whatever force this argument might have as to subsequent purchasers, the appellant cannot avail himself of it, as he owned his lots before the work was undertaken, and has ever since.

We do not mean to hold that officers charged with the duty of making assessments can delay doing so for any length of time they see fit, and then make a valid assessment at will; but only to hold that, there being no statute limiting the time for making the assessment, it must be done within a reasonable time ; and that, under the circumstances of this case, which are very peculiar, the assessment has been completed within such reasonable time.

The appellant also claims that the refusal of the board of revision and correction of assessment lists to consider, upon

the merits, his objections to the assessments, is a substantial error, for which the assessment should be set aside.

This board is composed of the comptroller, counsel to the corporation, and recorder of the city; and its powers and duties are declared in section 867 of the Consolidation Act. This section is founded on section 17, chapter 302, Laws of 1859, section 1, chapter 308, Laws of 1861, and section 6, chapter 580, Laws of 1872; and, as we conceive, confers no greater power on the board than it had under those laws. The power and authority of the board was defined in the *Matter of Lange* (85 N. Y. 311). The court says: " The board had no jurisdiction to set aside and vacate the assessment, for want of power in the corporation to impose any assessment whatever for the particular work to which it relates. . . . The general power of the board is indicated in its official title. It is a board for the revision and correction of assessment lists. The act of 1872 authorizes the board to hear, on the merits, all objections; but its final action is confined either to a confirmation of the assessment, or to returning it to the board of assessors, for revisal or correction. There is no power given to the board of revision and correction to inquire into the original authority to make the assessment, or to vacate the assessment for defect of power in the city to impose it; and this power cannot, we think, be gathered from the statutes creating it. Its appropriate function is to review the judgment and discretion exercised by the assessors, in distributing the tax."

The appellant alleges in his petition that, at a meeting of the board, held November 12th, 1885, he requested it to consider certain objections to the assessment in question, and to examine into the assessment on its merits, evidence concerning which he then proposed to offer; but that the board, arbitrarily and without reason, and refusing to give any reason whatever for so doing, refused to examine into the assessment upon its merits, or to consider the objections, or to accept or receive testimony in support thereof, and thereupon confirmed the assessment list.

An examination of the minutes of the board shows that

the board only refused to take testimony directed to a reduction of the assessment, to any amount less than the face of the certificates of the commissioner of public works and comptroller; and that the appellant's offer of testimony was only "to prove that the expense of the work for which this assessment is laid, is extravagant, and beyond the just and fair market value thereof; and that the assessment upon the objector's lots exceeds a fair and just proportion of the fair value of the work done. Also, that the department of public works, in contracting for the work named, without submitting the same to competition, and at extravagant prices therefor, did so, claiming that it was necessary to do so to protect the Croton aqueduct mains and tunnels from injury and damage; and for this reason, that part of the cost of said work, which exceeds its then contract price or fair value, should be assessed upon the city, and not upon the property fronting thereon."

Had the petitioner's offer been accepted and sustained by evidence, it would have proved simply that the certificates were too large; a matter over which, it was decided in the *Matter of Lange* (*supra*), the board had no jurisdiction; and we do not think the board erred in refusing to receive the testimony, as it would have had no power to have acted on it, if taken.

But appellant contends that, even if the board had no power to go behind the certificates, it should have considered his first, third, and eighth objections.

The first objection was founded on the fact that the work was not done by contract let to the lowest bidder. This was passed upon, and the validity of the contract sustained, in *Brown* v. *The Mayor, etc.* (63 N. Y. 239), and was not within the jurisdiction of the board (*Matter of Lange, supra*).

The third objection is based upon the fact that a larger price was paid for the work, because of the necessity of protecting the Croton aqueduct from injury, and that this enhanced price should be charged to the city, and not assessed on the property holders.

This, at first sight, seems only just and equitable; yet, when we consider that the improvement was not undertaken to benefit the Croton aqueduct, nor the city property, but for public convenience, and the benefit of property along the line of the improvement, the equities are not so clearly in favor of the claim.

It must be assumed, that the owners of the property, when they purchased it, knew the proximity of the aqueduct to Tenth Avenue, and their lots, and that when that avenue was regulated, etc., it would cost more to do so than under ordinary circumstances; and that the lots were worth less than if they had been differently situated, because of the increased cost of making the improvement when it became necessary.

But in addition to what has been said, we doubt whether the assessors could take the enhanced cost into consideration in apportioning the assessment; for the law directs that the cost of such improvement shall be assessed "among the owners or occupants of all houses and lots intended to be benefited thereby, in proportion, as nearly as may be, to the advantage which each shall be deemed to acquire" (L. 1813 c. 86 § 175). The duty of the assessors is to distribute the cost upon the owners or occupants of houses and lots, and not to assess any part of it upon others, however much they may be benefited.

And for the reason last advanced, we think there was no error in not assessing part of the cost of the improvement upon the railroad company, which was the basis of appellant's eighth objection. The company owned neither houses nor lots on the line of the improvement.

This brings us to the last objection urged by appellant, on the argument; which is that the amount assessed upon the property of the line of the avenue exceeds the sum lawfully assessable therefor by the city; or, in other words, that the assessment should have been for the "expense actually incurred," only, and that no interest should have been included as a part of the expense.

In considering this question, we have fully appreciated

what was said by EARL, J., in *Tone* v. *The Mayor* (70 N. Y. 160): " There is such inextricable confusion in the local laws applicable to the City of New York, caused by their frequent alteration and amendment, that their application and construction are generally matters of difficulty and uncertainty."

The assessment complained of was composed of the following items:

| | |
|---|---|
| Payment under contract with Brown . . | $286,257.50 |
| Surveying . . . . . . . | 2,501.22 |
| Inspecting . . . . . . . | 1,698.00 |
| Interest . . . . . . . . | 61,433.68 |
| Total . | $351,890.40 |

Appellant contends that the only authority for assessing the expense of the improvement, is chapter 5, Laws of 1871, which provides: " The board of assessors in the City of New York are hereby authorized and directed to assess upon the property intended to be benefited, in the manner provided by law for making assessments for local improvements, the expense which has been or shall be actually incurred by the Mayor, Aldermen, and Commonalty of the City of New York for regulating and grading, and setting curb and gutter stones, and flagging the sidewalks in . . . Tenth Avenue from Manhattan to 155th Street in said city."

It is claimed this act was not superseded or repealed by the subsequent general law, chapter 556, Laws of 1880, being section 868 of the Consolidation Act, providing for assessments thereafter to be imposed for local improvements; and that the act of 1871 limited the assessment to the expense which had been or should " be actually incurred " by the city; and that, therefore, the item of $61,-433.68 for interest on the instalments paid to Brown was illegally and without authority included in the assessment. The case shows that this item was for interest on the instalments paid to Brown, calculated from the date of payment of each instalment, to the 12th of May, 1876, the time the compromise was effected, and was for nothing else.

Section 5, of chapter 556, Laws of 1880, was in force when this assessment was laid, and is as follows : " Section 5. All assessments hereafter imposed for local improvements in said city shall be made by the board of assessors on the following certificates, to wit:

" 1. The head of the department charged with the execution of the work in question, shall certify to the said board of assessors, the total amount of all the expenses which shall have been actually incurred by the Mayor, Aldermen, and Commonalty of the City of New York, on account thereof.

" 2. The comptroller shall certify to the said board of assessors, the amount of the interest, at the legal rate, upon the several instalments advanced, or payments made on account of such work, from the time of such payment or advance, by the city, to a day sixty days after the date of such certificates.

" Thereafter the said board of assessors shall assess upon the property benefited, in the manner now authorized by law, the aggregate amount of such certificates, or such proportion thereof as is now authorized by law, and the said board shall not in any way be enjoined, restrained, hindered, or delayed in the performance of this duty ; provided that nothing herein contained shall be construed to affect the existing powers of the board for the revision and correction of assessments." This act provides that " All assessments hereafter imposed " shall include just such interest as was included in this case.

The act of 1871 is silent on the subject of interest, and simply provides that the assessors shall assess the expense which has been or shall be actually incurred, for the improvement in Tenth Avenue, in the manner " provided by law for making assessments for local improvements." The object of the act appears to have been to subject this particular improvement to the laws applicable to assessments generally. One of these laws, in force at the time of making the assessment in question, was chapter 556, Laws of 1880, which provides for the inclusion of the disputed item.

Matter of Deering.

The last act, by its terms, applies to all assessments imposed after its passage, whether the work had been completed before its passage or not.

The second subdivision of section 5 requires the comptroller to certify the interest upon the several instalments advanced or judgments made on account of "such work." What is meant by "such work," is only explained by the expression in the first subdivision, by the phrase, " work in question," which refers to the work necessary for "local improvements," in the opening sentence of the section. These, we think, must be held to be all improvements for which assessments may be imposed. Besides, the words, "shall have been actually incurred," on which appellant's counsel chiefly relies to sustain his contention, only occur in the clause relating to the certificate of the head of the department charged with the execution of the work, and are nowhere made applicable to the interest certificate.

It was the duty of the comptroller to make the interest certificate, and the act by its terms, we think, applies to the assessment in question, and the interest was properly included therein. But if we are mistaken in this, it would not necessarily follow that a reduction should be made on appellant's property. The entire expenditure of the city for this improvement, including $61,433.68, interest, was $351,890.40 ; the entire amount assessed on private owners was $278,117.24, leaving a difference of $73,773.16. This difference is made up of the aggregate not assessable upon private property, under section 870, Consolidation Act, $60,196.98, together with the amount assessable on Trinity Cemetery, but for chapter 310, Laws 1879, $13,576.-18. It is plain, therefore, that although the interest has been charged on computing the amount to be assessed, yet the city has borne a portion of the amount larger than the interest charged, and the assessment upon the owners of private property is less than the " actual expense incurred," excluding interest. The actual expense, exclusive of interest, was $290,456.77, and the amount assessed on property

holders was $278,117.24, leaving a difference of $12,339.53, which the city loses in any event, exclusive of interest.

It still remains true, however, that some property owners were assessed their proportion of interest, while others were not aggrieved by its inclusion; but there is not sufficient data in the papers submitted to us to determine whether the appellant is or is not aggrieved thereby; nor the extent of the injury, if any; and the view we take of this case renders it unnecessary for us to determine that matter.

It is claimed by the appellant that, under the contract with John L. Brown, the city should have charged interest to the contractor from the date of the payments to him, to the date of confirmation of the assessment. There is a provision in the contract, to the effect that the city will pay to the contractor " upon the confirmation of the assessment . . . the whole amount of money accruing . . . excepting such sum or sums of money as may be lawfully retained. . . ." The contract proceeds to provide for the payment of monthly instalments of ninety per cent. in accordance with the ordinance of December 30th, 1854. This ordinance requires that a clause must be inserted in contracts, that payments will be made to the contractors by monthly instalments of seventy-five per cent., and that the contractors to whom such payments shall have been made, shall, upon the final payment of the amount due upon the several contracts, be charged at the rate of seven per cent. per annum for all sums that may have been advanced to them; . . . and it shall be the duty of the comptroller to deduct from the amount due on each contract the interest so charged.

We think the act of 1880, before quoted, has impliedly repealed the act of 1852, and therewith done away with the ordinance founded upon it. The act of 1880 has provided for the inclusion of interest and established an entirely different system of levying assessments.

But if it were not so, then it must be remembered the entire controversy between the city and Brown was compromised and settled, each party yielding a part of the

claim of the other, and by this settlement, Brown's claim was reduced from $140,842.57, to $80,000.00, or just about what the interest on the instalments amounted to, at the time, and thus it was saved both to the city and the taxpayers.

We are therefore of opinion that the assessment is valid, and the order of the Special Term should be affirmed, with costs.

ALLEN, J., concurred.

Order affirmed, with costs.