(96 App. Div. 501.)

In re HOLLISTER et al.

(Supreme Court, Appellate Division, Fourth Department. July 6, 1904.)

1. MUNICIPAL CORPORATION—EXTENSION OF BOUNDARY—STATUTE—VALIDITY.
    Laws 1895, p. 1314, c. 617, extending the boundary of the city of Rochester, is valid.

2. SAME—STREET IMPROVEMENTS—TIME FOR ASSESSMENT—CHARTER.
    The charter of the city of Rochester (Laws 1880, p. 71, c. 14) § 198, provides that, whenever the common council shall determine that the expenses of any improvement shall be defrayed by an assessment on the real estate to be benefited thereby, they shall declare the same by entry on the minutes, and that when such improvement is completed the entire expense shall be ascertained by the city treasurer, together with the interest paid or to be paid on the orders or notes issued by the city to pay the expenses of such improvement. Section 199 provides that the common council shall make an order reciting the amount of expenses to be assessed, and directing assessors to make an assessment on the property benefited. *Held,* that under these sections an assessment cannot be made until the completion of the improvement and ascertainment of the cost, and hence, where property is included within the city limits while an improvement of a street is in progress to the benefit of property without the city limits at the time the improvement was commenced, the newly included property is liable to assessment for the improvement.

**3. Same—Change in Assessment—Power of Council.**

Under the charter of the city of Rochester (Laws 1880, p. 66, c. 14) § 172, providing that the common council, before ordering any public improvement, shall cause an estimate of the cost thereof to be made, and require all persons interested in the improvement to attend the council at a time to be designated in a notice given for that purpose, and after a hearing of the property owners shall make such further order in respect to such improvement as they shall deem proper, the council has power to change and increase the portion of territory to be assessed for the improvement; and hence, where a street improvement was commenced while the property on one side of it was not in the city limits, and the cost of the whole improvement was assessed against the property on the street which was within the city limits, on a subsequent inclusion of the whole property affected within the city limits, prior to the completion of the improvement, the council properly increased the territory to be affected by the assessment so as to cover the newly incorporated property.

**4. Same—Irregularity in Assessment—Reassessment.**

Where the common council of the city of Rochester improved a street, the property on one side of which was not, at the time of beginning the improvement, within the city limits, on account of which the assessment was made only on the property which was within the city limits, and the assessment was declared invalid, the council had power to direct a reassessment, under the charter (Laws 1880, p. 75, c. 14) § 215, providing that, in case any assessment shall remain unpaid on account of any irregularity, omission, or error, the council may, in their discretion, order a reassessment.

**5. Same—Innocent Purchasers.**

Where real estate in a city abutting on an improved street is purchased, there is no merit in the claim of the purchasers that they had no knowledge or notice that the cost of the improvement remained unpaid, or that there was a claim against the property therefor, entitling them to be protected as bona fide purchasers, the improvement itself being patent to all who saw the lots, and whether or not it had been paid for being easily ascertainable by proper inquiry.

**6. Same—Reassessment—Interest.**

On a reassessment of property by the common council of the city of Rochester under its charter (Laws 1880, p. 75, c. 14) § 215, giving the council authority to reassess in certain cases, interest is properly included under section 198, providing that the entire expense of an improvement shall be ascertained by the treasurer, together with interest paid or to be paid on the orders or notes issued by the city to pay the expenses of such improvement, and that interest shall be reckoned to the time the last installment of the assessment shall become due.

Stover, J., dissenting.

Appeal from Special Term, Monroe County.

In the matter of the petitions of Emily J. Hollister and others under Heydecker's Gen. Laws, p. 4637, c. 22, § 466 et seq., to vacate an assessment for local improvement of property in the city of Rochester. From an order dismissing the petitions, petitioners appeal. Affirmed.

Argued before McLENNAN, P. J., and SPRING, WILLIAMS, HISCOCK, and STOVER, JJ.

Reed & Shutt, John F. Kinney, and Scott Cummings, for appellants. W. W. Webb and B. B. Cunningham, for respondent.

WILLIAMS, J. The order should be affirmed, with costs.

There were five proceedings commenced by different petitions, which were consolidated. Issues were formed by the answer of the city, and evidence was taken tending to establish the following facts: In May,

1894, when the improvement in Culver street was contemplated, the east line of the city of Rochester ran along the center of that street from East avenue to the Erie Canal Bridge. The lot owners on the west side of the street, whose property was within the city limits, petitioned the common council to improve the street by paving the same the full width thereof; and about the same time the owners of lots on the east side of the street, whose property was not then within the city limits, but who owned also about two-thirds of the lands fronting upon the west side of the street within the city limits, petitioned the common council to make the improvement, and agreed to pay one-half the expense thereof proportionately according to the number of feet owned by them, respectively, on the easterly side of the street. Thereupon the common council adopted an ordinance that the improvement was necessary, and should be made, and directing the expense thereof, estimated at $23,000, to be assessed, the whole of it, upon the lots lying on the west side of the street, being within the city limits. In August of the same year this ordinance was amended by reducing the estimated expense of the improvement to $21,500, and directing a hearing of the parties interested at the next regular meeting of the common council, and thereafter in the same month the final ordinance was adopted after hearing such persons as appeared. The city thereupon made the improvement, and it was completed and accepted in October, 1895. In May, 1895, the easterly boundary of the city of Rochester was extended by the Legislature (chapter 617, p. 1314, Laws 1895) so as to take into the city most of the lots on the easterly side of Culver street. The entire cost of the improvement was assessed upon the lots on the west side of the street under an ordinance adopted in 1895, and the assessment was confirmed by the common council in July, 1896, and some portions of the tax were thereafter paid. One of the west side property owners brought an action against the city in 1901 to vacate the assessment against the city, and it was therein determined that the ordinance and assessment were illegal and void. Thereupon the common council vacated the assessment, and repealed the ordinance under which it was made, and in 1902 adopted an ordinance determining that the cost of the improvement should be assessed upon the lots upon both sides of the street, so far as they were then located within the city. And February, 1903, after hearing the parties interested, the final ordinance was adopted directing such assessment, and it was made and confirmed by the common council in June, 1903. These proceedings were then commenced under Heydecker's Gen. Laws, p. 4637, c. 22, § 466 et seq., to vacate or reduce the assessment. The common council evidently directed the first assessment upon "the theory that the petition signed by the residents of the city in the light of the petition signed by the property owners of Brighton authorized the assessment of the entire expense of the improvement upon the property on the Rochester side of the street, leaving the property owners thus assessed to collect one-half of such assessment from the petitioners owning property on the Brighton side of the street." The court held this would not do, and the city bowed to that decision, and its common council proceeded to correct the assessment under the power given by section 215 of its charter (Laws 1880, p. 75, c. 14). At the time the improvement was completed and

accepted the property on both sides of the street was in the city of Rochester, and subject to its jurisdiction. The property on the east side was brought in by act of the Legislature while the improvement was being made, and before its completion. The Legislature clearly had power to extend the city·limits. 20 Am. & Eng. Ency. (2d Ed.) 1152; Dillon, Mun. Cor. § 185; Smith, Mun. Cor. vol. 2, § 1266. The common council had power to direct the assessment of the cost of the improvement upon all the property on both sides of the street, which was then within the city, and it should have done so. The assessment could not be made until the completion of the improvement and the ascertaining of the cost thereof. Charter, §§ 198, 199 (Laws 1880, p. 71, c. 14). If it be said that the assessment had to be directed in accordance with the former determination as to the portion of the city to be assessed, which was necessarily made at an early stage of the proceeding, yet the common council had power to change and increase the portion and territory so to be assessed under section 172 of the charter (Laws 1880, p. 66, c. 14), and should have done so. The assessment was to be made as of the date of the completion of the improvement. Matter of Mayor, 46 App. Div. 52, 61 N. Y. Supp. 437, on appeal 162 N. Y. 658, 57 N. E. 1117; Matter of Mayor, 85 App. Div. 347, 83 N. Y. Supp. 433. The common council having had power to direct the assessment of the property on the east side of the street when the original assessment was made in 1895, and, that assessment having been determined by the court to be invalid, the common council had power to direct the reassessment, as it did in February, 1903,· and to confirm the same as it did in 1903, under section 215 of the charter.

There is no merit in the claim that some of the petitioners were purchasers of their lots after the improvement was made, without knowledge or notice that the cost thereof remained unpaid, or that there was a claim against their property therefor; that they were, therefore, bona fide purchasers, and should be protected as such. The improvement itself was patent to all who saw the lots, and they could easily ascertain by proper inquiry whether it had been paid for. Matter of Deering, 14 Daly, 89, affirmed 105 N. Y. 667.

Interest was properly included in the reassessment under section 198 of the charter. Whether the amount included was in excess of the amount allowed by law is not properly before us, it not having been passed upon by the trial court. The petitioners were given an opportunity to be heard upon that question, and to furnish further proof if they desired. They did not avail themselves of such opportunity. The design of the statute was to make the city whole, so that the cost of local improvements should fall upon the property owners, and not upon the taxpayers at large, and we must assume, in the absence of proof to the contrary, that only such interest was included in the assessment as was proper under the charter. The property upon this street in question has had the benefit of this expensive improvement. It was necessarily completed before the assessment could be made and collected. The attempt by the owners of the property benefited to escape payment for the improvement and impose the burden thereof upon the taxpayers at large is not favored by the courts. It will succeed only when the law actually demands it.

We think in this case the assessment was properly confirmed, and the petitions were properly dismissed. The order should therefore be affirmed, with costs. All concur, except STOVER, J., who dissents.

STOVER, J. (dissenting). I dissent from the view that the city had the right to assess this improvement upon the petitioners. The paving was done by the city under an agreement that it should be paid by the individuals whose property was benefited. This did not give the city a right to assess the expense upon the property benefited, but gave it only such rights as it obtained by the contract, namely, to compel the individuals to pay in accordance with the contract. The paving, therefore, was in no sense a lien upon the property; nor can it be said that anything in the proceedings shown upon this proceeding gave jurisdiction to the municipality to assess against the property. At the time the property was purchased there was no lien, either perfect or inchoate, and the purchasers had the right to rely upon the apparent situation. That the city subsequently thought there were some equitable rights existing in its favor, and undertook to assert those rights in accordance with its idea of equity, did not confer jurisdiction, nor did its action create a valid lien against the property. The municipality acquired its only jurisdiction to levy a tax upon the inception of the proceedings to lay the pavement. Concededly, it had no authority at that time to lay the basis for a charge against the property involved here, and the fact that the Legislature thereafter extended the city limits so as to take in the property did not enlarge the power of the municipality to levy taxes. These property owners were entitled to be admitted into the municipality with no greater special liens upon their property than then existed, and the law admitting this property cannot properly be construed to be so far retroactive as to permit the assessment of an unauthorized expenditure of money by the municipality, or one which, if warranted at all, is so by special agreement with certain individuals upon this property.

I think the tax was illegally imposed, and the order should be reversed.