IN THE MATTER OF THE PETITION OF ROBERT SCHELL TO
VACATE AN ASSESSMENT.

Petitioner was the owner of certain lots in the city of New York, which
were valued for taxation by the tax commissioners, under the act of
1859 (chap. 302, Laws of 1859), May 1, 1873, at $900 each, and May 1,
1874, at $1,000. Each lot was assessed by the board of assessors for a
street improvement, the assessments being completed March 5, 1874, and
on that day certified to the board of revision and correction, by whom they
were confirmed September 29, 1874. In proceedings to vacate the
assessments, *held*, that the assessments were limited by the act of 1840
(§ 7, chap. 326, Laws of 1840) to one-half the value of the lots as valued
for taxation; that the valuation, as made in 1873, furnished the limit of
the assessments, as that was the last valuation preceding the assess-
ments; that the fact that the assessments were confirmed by the board
of revision and correction, after the valuation of 1874, did not make that
valuation the limit, as that board does not act as assessors; and that,
therefore, an assessment of over $450 per lot was error.
*It seems*, that if said board had sent the assessments back for correction,
the assessors having the whole subject before them, after the valuation
of 1874, might have taken that as a limit.
*In re Schell* (16 Hun, 283), reversed.

(Argued February 18, 1879; decided March 18, 1879.)

APPEAL from order of the General Term of the Supreme
Court, in the first judicial department, modifying an order
of Special Term, which corrected certain assessments for a
local improvement upon five lots, in the city of New York,
owned by the petitioner. (Reported below, 16 Hun, 283.)

Each lot was assessd at $752.50. The order of Special
Term reduced this assessment to $450 per lot; this was
changed by the order of General Term to $500 per lot.

The petitioner sought to vacate the assessments chiefly
upon the ground that the assessment upon each lot exceeded
half its value, and so was in violation of section 7, chapter
326, Laws of 1840. It appeared that the assessment was
completed by the board of assessors, and filed in their office
on the 5th day of March, 1874, and that it was transmitted
by them to the board of revision and correction of assess-

ments on the same day, by whom it was affirmed September 20, 1874.

The lots were valued by the tax commissioners, for the year 1873, at $900, the books containing the annual record of the assessed valuation of real and personal estate for that year having been closed on the first of May, 1873, pursuant to section 8 of chapter 302 of the Laws of 1859. They were valued by the commissioners, for the year 1874, at $1,000 each.

*S. Jones*, for appellant. By the failure of the board of revision and correction to act, within thirty days after March 5, 1874, the assessment became confirmed, and the powers of that board ceased and were exhausted. (*Zone* v. *Mayor*, *etc.*, 70 N. Y., 157; Laws 1859, chap. 302, §§ 15, 16; Laws 1857, chap. 677, § 19; Laws 1861, chap. 308.) The action of the assessing board must be based on a prior assessment roll, and that roll in this case was that of 1873. (*In re Second Ave. M. E. Church*, 66 N. Y., 1873.)

*Wm. C. Whitney*, for respondent. The assesssment was completed when it was confirmed by the board of revision and correction, and until then the estimated value could be changed. (*In re Schelle*, 14 Hun, 15.)

EARL, J. It is provided in section 7 of chapter 326 of the Laws of 1840 that "commissioners or assessors for making estimates and assessments for any improvements authorized by law to be assessed upon the owners or occupants of houses and lots, or improved or unimproved lands, shall in no case assess any house, lot, improved or unimproved lands more than one-half the value of such house, lot, improved or unimproved lands as valued by the assessors of the ward in which the same shall be situate." It has been several times held in this court that this statute is still in force, and that it limits assessments for improvements authorized by existing laws.

The ward assessors have been superseded by the tax commissioners, (chap. 302, Laws of 1859), and the valuations of real and personal property in the city of New York are annually completed, under their direction, on the first day of May.

Assessments for improvements are required to be made by a board of assessors, (Laws of 1859, chap. 302, § 15, etc.); and when they have completed such assessments, they are required to certify them to the board of revision and correction, (chap. 308, Laws of 1861); and that board is required to make the revision of such assessments without delay, so that the same shall be confirmed within thirty days from the time they shall respectively be presented for confirmation; and if not so confirmed, they shall be deemed to be confirmed, at the expiration of thirty days from the time they shall be respectively so presented for confirmation. (*Tone* v. *The Mayor, etc.*, 70 N. Y., 157.)

The petitioner complains of excessive assessments upon five lots owned by him, which were severally valued, under the law of 1859, for taxation by the tax commissioners, May 1, 1873, at $900, and May 1, 1874, at $1,000. Each lot was assessed in 1874 by the board of assessors for a street improvement at $752.25. The Special Term reduced this assessment to $450 upon each lot; and the General Term modified this reduction, by fixing the assessment at $500 upon each lot. The sole question to be decided here, therefore, is whether the valuation made May 1, 1873, or that made May 1, 1874, is, under the law of 1840, to furnish the limit of these assessments. We are of opinion that the valuation of 1873 is to furnish the limit. That was the last valuation preceding these assessments. They were completed by the board of assessors March 5, 1874, and were on that day certified to the board of revision and correction. The assessors had completed the assessments, and had no further act to perform. If they had regarded the law, they would have assessed each lot for not more than $450, under the limitation imposed by the valuation of 1873. The valua-

tion of 1874 was not then in existence, and, of course, they could not have been governed by that. If there were nothing more in this case, it would be entirely free from doubt.

But after these assessments were certified to the board of revision and correction, they were confirmed by it September 29, 1874, after the valuation of 1874 had been made by the tax commissioners; and hence, it is claimed that the latter valuation is to furnish the limit, under the law of 1840. This claim is not, however, well founded. That board does not act as assessors. It has no power to make assessments. It can only review assessments made by the board of assessors; and if it finds no errors, it must confirm the assessments, as made. If it finds errors, it must point them out, and send the assessments back to the board of assessors for correction. If the board of revision had sent these assessments back for correction in September, 1874, it may be that the assessors, then having the whole subject before them, might have taken the valuation of 1874 to furnish the limits of the assessments. But the assessments were not sent back. They were confirmed, and the action of the assessors made final. The assessments completed in March, 1874, were the only assessments made. Hence, the Special Term was right, in the reduction made by it.

The order of the General Term must be reversed, and that of the Special Term affirmed, with costs.

All concur.

Ordered accordingly.