F. A. Taylor (Arthur More, of counsel), for appellants.
W. J. & F. W. Welsh (W. J. Welsh, of counsel), for respondent.

---

(40 App. Div. 452.)

### In re OPENING OF EAST 169TH STREET.

(Supreme Court, Appellate Division, First Department.    May 12, 1899.)

1. MUNICIPALITIES—STREET OPENING—DAMAGES—ASSESSMENT.

Under Greater New York Charter (Laws 1897, c. 378) § 1614, continuing all proceedings and preserving all rights existing under the consolidation act when the charter took effect, unless otherwise provided; and section 1608, repealing previous legislation affecting the local government only so far as it was inconsistent with the charter, and providing that, so far

as the charter provisions were the same in terms or substance as previous legislation, they were intended to be but a continuation of the former acts, —where street-opening proceedings were instituted under the consolidation act (Laws 1882, c. 410), and valuations (though subject to correction) made for property taken or benefited, before the charter took effect, the damages must be assessed under the consolidation act.

2. SAME—INTEREST.

Interest was properly not included in the award as provided in section 990 of the charter, the consolidation act (section 13) not providing therefor.

3. SAME.

Consolidation Act (Laws 1882, c. 410) § 1002, providing that "all moneys paid" by the city for damages shall be "assessed equally on the lands benefited," does not include interest.

Appeal from special term, New York county.

Proceedings for the opening of East 169th street in the city of New York. From an order confirming the report of the commissioners (56 N. Y. Supp. 819), the city appeals. Affirmed.

The proceeding was commenced under a resolution of the board of street opening and improvement, adopted July 5, 1895, the board acting under the provisions of the consolidation act (Laws 1882, c. 410, as amended by Laws 1893, c. 660), which was then in force. This resolution directed the counsel to the corporation to take the necessary steps in the name of the mayor, aldermen, and commonalty of the city of New York to acquire title to the lands required for the purpose of opening and extending East 169th street from Boscobel avenue to Jerome avenue, and directed that the entire cost and expense of said proceeding should be assessed upon the property deemed to be benefited thereby. On April 9, 1896, the board adopted another resolution, directing that on the 16th day of September, 1896, the title to the lands so required to be taken for such purpose should be vested in the mayor, aldermen, and commonalty of the city of New York. The commissioners, having been duly appointed, and having qualified, and having viewed the property, and taken all the testimony presented to them on behalf of the property owners and on behalf of the city, prepared their preliminary abstracts of estimate and assessment, and the same were duly filed upon the 22d day of December, 1897. Upon the same day notice was duly published in the City Record of the filing of this preliminary abstract, and that the commissioners would meet to hear objections thereto on the 24th day of January, 1898, and that their report would be presented for confirmation on the 28th day of February, 1898. This hearing was given to numerous objectors, and upon the 4th day of November, 1898, the commissioners signed their final report, which was presented to the court below at special term for confirmation on the 5th day of December, 1898. It was confirmed by the order appealed from, which was entered upon the 24th day of February, 1899. The city is the only appellant.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

John F. Dunn, for city of New York.

Truman H. Baldwin, for A. Newbold Morris and certain other property owners.

Ernest Hall, for William N. Clark and certain other property owners.

Charles V. Gabriel, for Elizabeth Schilling and certain other property owners.

John C. Shaw, for certain property owners.

James A. Deering, by permission of the court, for certain property owners interested in other pending proceedings wherein the same questions are involved.

BARRETT, J.     But two questions are presented by this appeal. The first relates to the method of valuation adopted with regard to the lands assessed for benefit; the second to the failure to include interest (payable upon the awards) in the assessments for benefit. Under the consolidation act (Laws 1882, c. 410, § 981), the commissioners, in assessing for benefit, were limited to one-half of the value of the property so assessed as valued by the tax commissioners. Under the Greater New York charter (Laws 1897, c. 378, § 980), they are limited to one-half such value "as valued by them." The city contends that the commissioners should have themselves valued the property assessed, and should not have accepted the valuation of the tax commissioners; in other words, that their proceedings in this regard were governed by the Greater New York charter, and not by the consolidation act.     We see no force in this contention.     The proceedings were instituted, and all the valuations, whether of property taken or of property benefited, made, before the present charter took effect.     These valuations were, it is true, thereafter subject to correction, but not to a complete remaking upon a new and entirely different basis.     Such corrections related only to errors in the application of the governing rule ordained by the law as it existed when the valuations were made.     The new rule laid down by the present charter is substantially in the nature of a rule of evidence, and we think it would have governed the commissioners had it gone into effect prior to their action under the earlier rule.     This earlier rule had, however, been fully applied prior to the change effected by the charter.     Under that earlier rule the commissioners had taken and considered all the testimony presented to them by the property owners and the city, and had substantially given judgment upon that testimony, subject merely to correction for error or mistake in weighing or applying it.     No objection was taken by the city to the commissioners' preliminary abstracts of estimate and assessment,—which constituted their judgment, subject to such correction,—and none could have been taken, inasmuch as the commissioners acted in strict accordance with the precise directions of the then governing law. What, then, would be the effect of upholding the city's present contention?     It would be to convict the commissioners of error in refusing, after the new charter went into effect, to cancel or set aside all that they had previously done, and in further refusing to reopen the proceedings for the purpose of taking testimony upon the subject of valuation entirely de novo.     In other words, the city's contention is that, after doing all the work and making all the awards and assessments prior to the 1st day of January, 1898, the commissioners were bound upon the 2d day of January, 1898, to commence all over again.     The legislature meant nothing of this sort.     It would require unmistakable language of the most positive and direct kind to warrant the construction which would give to this charter legislation such a sweeping retrospective effect.     Instead of that, we find provisions indicating quite the reverse.     Thus it is provided in section 1614 of the new charter that:

"All actions, suits, proceedings, or prosecutions under the New York City consolidation act of 1882, or amendments thereof, or other laws relating to

the city of New York and herein repealed or modified, * *. * and pending when this act takes effect, * * * may be prosecuted and defended to final effect in the same manner as they might under the laws then existing, unless herein otherwise specially provided."

The legislative intention is further indicated by section 1608 of the new charter. It is there provided that previous legislation relating to or affecting the local government of the city of New York as theretofore constituted is repealed only so far as the provisions thereof are inconsistent with the provisions of the new charter, or so far as the subject-matter thereof is revised or included therein. It is further provided that, so far as the charter provisions are the same in terms or in substance and effect as such previous legislation, they are not intended to be a new enactment, but a continuation of the other existing acts, the purpose being to apply such existing acts as modified by the new charter to the new city. When this is read in connection with section 1614, supra, the present question seems reasonably free from difficulty. Where the provisions of the charter with respect to the opening of streets are the same in terms or in substance and effect as the provisions of the consolidation act, the commissioners, after the charter went into effect, could proceed to finality in the same manner as they might under the prior existing law, the charter being but a continuation of such prior existing law. Where, however, the provisions of the pre-existing law were modified by the charter, all subsequent action was regulated by the latter. The effect of the modification, however, was not to wipe out what had already been lawfully done, but to prescribe what should thereafter be lawfully done. This is not in the least in conflict with our decision in Re Mayor, etc., of the City of New York, 33 App. Div. 365, 53 N. Y. Supp. 875. We there held that the fees of commissioners in street-opening proceedings were regulated by the pre-existing law down to the date when the charter took effect, and thereafter by the charter provisions. The proceeding there was —to refer again to section 1614 of the charter—to be prosecuted to final effect in the same manner as it might under the laws then existing, except as therein "otherwise specially provided," namely, except as the fees were therein lessened. The fees accrued for the services as they were rendered, and the commissioners were only entitled to such compensation as the law gave them at the time of rendition. This was not treating the charter provisions retrospectively. It was simply giving prospective effect to that which was itself prospective. In the present case, the essential thing was that the assessed property should be accurately valued. It was so valued according to law; that is, according to the law then regulating the method of valuation. Such valuation then became final and conclusive so far as the governing statutory rule was concerned, and it could only be disturbed, if at all, by specific legislative direction.

We also think that the commissioners properly declined to include in the assessments for benefit interest on the awards made for property taken. Their action on this head was also correct under the provisions of the consolidation act as amended by chapter 660 of the Laws of 1893. The conclusion at which we have already arrived

is decisive of this question as well. It was provided in section 13 of the act of 1893, supra, that:

"All damages awarded by the commissioners of estimate and assessment, with interest thereon from the date when title to the land shall have vested in the mayor, aldermen and commonalty of the city of New York, as provided in this chapter, and all costs or expenses which may be taxed, shall be paid by the mayor, aldermen and commonalty of the city of New York to the respective persons," etc.

The commissioners did not include interest in their awards. They simply awarded the actual value of the property taken, leaving the collection of interest to the natural operation of this provision; and they assessed against each parcel benefited its due proportion of the fixed award. The claim of the city is that they should have included interest in the awards, and thereupon assessed the parcels benefited with their due proportion of that interest, as well as of the actual value of the property taken. This claim is principally based upon the following provision of section 990 of the new charter:

"Interest at the legal rate upon the sum or sums to which the owners, lessees, parties or persons are justly entitled upon the date at the vesting of title in the city of New York, * * * from said date to the date of the report of the commissioners shall be allowed by the commissioners as part of the compensation to which owners, lessees, parties or persons are entitled."

The city's argument here proceeds upon somewhat the same lines, and is answered by the same views, as those already indicated. The commissioners, when they made the awards, did so correctly under the act of 1893, supra, and they were not required, nor, indeed, had they authority, upon the passage of the charter to revoke their previous action, and allow interest as part of the property owners' compensation. Here was a clear case of a modification of the existing law. Under the latter, interest ran upon the award from the date when title vested in the city until it was paid. Under section 990 of the charter, the commissioners are to allow interest from the date of the vesting of title to the date of their report as part of the property owners' compensation. Section 1001 of the charter then adds that interest shall cease to run on the awards six months after the date of confirmation of the report unless within that time demand be made therefor. We think these modifications were not intended to embrace awards and assessments which had ripened into practical finality prior to the taking effect of the charter, and that the commissioners, having properly performed their duty under the law as it existed when the awards and assessments were made, cannot, in the absence of any specific legislative direction to the contrary, be held to have erred in adhering to their findings and conclusions based upon such existing law.

It is also claimed that, even under the act of 1893, supra, interest upon the awards should have been assessed upon property benefited. This is based in part upon the phraseology of section 1002 of the consolidation act, with which section 1003 of the new charter in the main corresponds. That section reads as follows:

"All moneys paid under the provisions of this title by the mayor, aldermen and commonalty aforesaid, shall be assessed equally and proportionately, as far as the same may be practicable, upon the lands and premises benefited

by the improvement, and shall be a lien and charge thereon, and shall be applied, levied, and collected in the manner provided by law for the assessment, levy, and collection of similar expenses and disbursements for the reimbursement of the city treasury."

It is said that interest comes under the head of "moneys paid under the provisions of this title," and consequently should be assessed.    This claim is quite new.    So far as we are aware, running interest payable upon awards has never been assessed as part of the costs and expenses of such proceedings.    The "moneys" referred to in the sections in question are clearly moneys paid in the acquisition of title and in the costs and expenses connected therewith.    These moneys certainly do not mean moneys paid to the property owners to compensate them for the city's failure to do them prompt justice. It would, indeed, be impossible for the commissioners to assess any given sum for such interest, for how could they foretell when the city would pay the principal?    Nor would it be just to do so, even if they could, for why should any one be assessed to enable the city to enjoy the property taken without present cost?    We are speaking, of course, of cases like the present, where the title vests in the city pending the condemnation proceedings.    There the owner is summarily devested of title and of all use of his property.    If he is to have any further use, it must be as the city's tenant; otherwise, he becomes a trespasser.    In such cases the city has the title and the exclusive use.    Why, then, should it not exclusively bear the burden of interest until the awards are paid?    The interest is but a substitute for the very use which it has.    It certainly should not have both.    The city's use is of itself of no benefit to the property assessed; nor is the money substituted for it in any just sense a part of the costs or expenses of the proceeding.    The true theory of award and assessment is that, when title vests in the city for public use, the property owner's right to just compensation immediately attaches, and therewith the assessment for benefit accrues.    The latter should surely not be increased merely because the city finds it inconvenient, or even impossible, while holding the title to the property, and enjoying its exclusive use, to defer the payment of its price.

We need not consider the effect of this new provision in section 990 of the charter directing the commissioners in such cases to allow interest from the vesting of title to the date of their report as a part of the compensation to which the property owners are entitled.    Whether it substantially changes the method of assessments for benefit is a question which we leave open for consideration when it comes up in a case to which the section directly applies.    It has no application in the case at bar, and, while the considerations which we have adverted to in dealing with the pre-existing law may seem to have a bearing upon this section as well, we wish to leave the question free for further discussion when it necessarily arises, without any intimation as to the effect upon it of these considerations.

The order appealed from should be affirmed, with costs.    All concur.