In the Matter of the Application. of THE MAYOR, ALDERMEN AND COMMONALTY OF THE CITY OF NEW YORK, Relative to Acquiring Title Wherever the Same has not been Heretofore Acquired, to the Lands, Tenements and Hereditaments Required for the Purpose of Opening WHITTIER STREET (Although not yet Named by Proper Authority), from Hunt's Point Road to Whitlock Avenue, as the Same has been Heretofore Laid Out and Designated as a First-class Street or Road, in the Twenty-third Ward of the City of New York.

THE CITY OF NEW YORK, Appellant; CHARLES. D. DICKEY and Others, Respondents.

*Assessment of property in New York city at not more than one-half its value — at what date the value is to be determined.*

Under section 981 of the Consolidation Act (Laws of 1882, chap. 410), providing that commissioners of estimate and assessment appointed in a condemnation proceeding shall not assess any property benefited by the improvements at more than one-half its value, such value is to be ascertained at the time of the filing of the report.

APPEAL by The City of New York from so much of an order of the Supreme Court, made at the New York Special Term and entered in the office of the clerk of the county of New York on the 25th day of February, 1898, as denies its motion to confirm the report of the commissioners of estimate and assessment of the city of New York and sending the report back to the said commissioners with a direction to limit the assessments for benefit to one-half of the value of the property assessed as valued by the tax commissioners for the purpose of taxation for the year 1896.

*John P. Dunn,* for the city of New York, appellant.

*Tompkins McIlvaine* and *Chas. D. Dickey,* for the respondent.

*John C. Shaw,* for the estate of Paul Spofford, respondent.

Ingraham, J. :

This proceeding was commenced on August 3, 1895. The commissioners of estimate and assessment were appointed by an order of the Supreme Court, entered on October 11, 1895. A preliminary report was filed November 20, 1897. By this report the commissioners limited the assessment to one-half of the value of the property as valued by the tax commissioners for the year 1897. The respondents upon this appeal, however, appeared before the commissioners and objected to that assessment upon the ground that it exceeded one-half of the value of the property as assessed for the year 1896 when the property to be taken vested in the city under the statute. Testimony was given before the commissioners from which it appeared that such assessment did exceed the assessed value of the property for the year 1896, but did not exceed the assessed value of the property for the year 1897, whereupon the commissioners overruled the objections, and, by their final report, filed December 24, 1897, assessed the respondents for benefit in an amount exceeding one-half of the assessed value of the property as assessed for taxation for the year 1896, but not more than one-half of the value of the property as assessed for taxation for the year 1897. Upon an application to the court to confirm this final report, the court held that the commissioners of estimate and assessment should have restricted the assessment for benefit to one-half the value of the property as assessed for taxation for the year 1896, and the case was sent back to the commissioners to correct the assessment in accordance with the views of the court at Special Term, and from the order entered upon such application the city appealed.

By section 981 of the Consolidation Act (Chap. 410, Laws of 1882) it is provided that " Commissioners for making estimates and assessments for any improvements authorized by law to be assessed upon the owners or occupants of houses and lots, or improved and unimproved lands, shall in no case assess any house, lot, improved or unimproved

lands more than one-half the value of such house, lot, improved or unimproved land as valued by the tax commissioners." It is difficult to see what relation the date of the commencement of a proceeding or the time at which the property taken under the proceeding vests in the city has to the assessment upon the adjacent property benefited by the improvement. The institution of the proceeding and the appointment of the commissioners of estimate and assessment is to ascertain the amount that the owners of the property to be taken for public use should be paid for their property ; and such a proceeding is necessary whether the property is to be paid for by the city at large or by those who are benefited by the particular improvement for which the property is to be acquired. That amount having been ascertained, in this particular proceeding it became the duty of the commissioners to assess that amount upon the property in the vicinity benefited by the improvement. These duties are prescribed by sections 970 and 973 of the Consolidation Act. By section 975 it is made the duty of the commissioners to report fully and separately the amount of loss and damage and benefit and advantage to each and every owner or person entitled to or interested in any lands so acquired for the purpose of such improvement; and by section 976 it is made the duty of the commissioners to estimate, assess and report the value of such benefit to the owner or owners in respect to the lands benefited by the improvement and not included within the limits of the street or public place to be opened, laid out or extended. Thus, the duty of the commissioners as to the two classes of property is entirely distinct. They ascertain the value of the lands taken and report separately as to each person interested in such lands and the damage that he has sustained in consequence of the appropriation of the specific property. As to the lands not taken, but which are within the area of the estimate for benefit, they are to ascertain and report the benefit which will accrue to such property by reason of the appropriation of the property taken for the specific public use. From the nature of things the latter estimate for benefit can only be made after the amount of the award for property taken is ascertained, and when the statute says that when making such an assessment for benefit the commissioners shall not assess any lot or piece of land for more than one-half the value thereof as valued by the tax commissioners,

it must necessarily speak of the time at which the amount of the benefit is ascertained, *i. e.*, at the time of making the report. Until within a comparatively short time the title of lands included in such a proceeding did not vest in the city until the confirmation of the report of the commissioners of estimate and assessment by the court. In relation to proceedings of this character, however, the Legislature has quite lately changed the rule by providing that the property shall vest in the city before the confirmation of the report by the court, but this amendment of the law had no relation to the amount of the assessment for benefit or the method by which the amount was to be ascertained and the assessment levied upon each specific piece of property benefited. The section under consideration evidently speaks of the time at which the commissioners by their report are to fix the amount of the assessment to be imposed. The language of the statute is that the commissioners shall in no case assess any lot, etc., more than one-half the value of such lot, etc., as valued by the tax commissioners. As valued, when? Not one or five years before, but as valued at the time of their official action — the filing of the report. It would be straining the language used in this section to make it apply to any time prior to that at which the commissioners acted when they " assessed " the property. It was not intended to lay down any different rule in *Matter of the Mayor* (40 App. Div. 452). In that case the first question presented related to the method of valuation adopted by the commissioners of estimate and assessment with respect to the lands assessed for benefit, and the second to the failure to include interest in the assessment for benefit. Under the Consolidation Act the commissioners were limited to one-half the value of the property so assessed as valued by the tax commissioners, while under the New York charter they were limited to one-half such value as valued by themselves. That proceeding was commenced some time prior to the enactment of the New York charter (Laws of 1897, chap. 378), when the provisions of the Consolidation Act were in force. The decision there was put expressly upon the ground that the proceedings were instituted and all the valuations, whether of property taken or of property benefited, were made before the present charter took effect. Mr. Justice BAR-RETT, delivering the opinion of the court, said : " The new rule laid down by the present charter is substantially in the nature of a rule of

evidence, and we think it would have governed the commissioners *had it gone into effect prior to their action under the earlier rule.* This earlier rule had, however, been fully applied prior to the change effected by the charter. Under that earlier rule .the commissioners had taken and considered all the testimony presented to them by the property owners and the city, and had substantially given judgment upon that testimony, subject merely to correction for error or mistake in weighing or applying it." Thus, in that case, if the formal action of the commissioners had taken place after the new charter took effect, it would have been the duty of the commissioners to have applied the rule as laid down by the new charter, and not as laid down by section 981 of the Consolidation Act. In the case now before us, prior to the time that the commissioners formally acted in ascertaining the benefit to these respondents, the tax commissioners had valued the respondents' real estate benefited by the improvement for the purposes of taxation for the year 1897, and thus, when the commissioners came to act, they found such a value existing, and it was their duty to consider that such a valuation was the one that was to govern them in estimating the amount to be imposed as an assessment. The observation of the court at page 459, that "The true theory of award and assessment is that when title vests in the city for public use the property owner's right to just compensation immediately attaches, and therewith the assessment for benefit accrues," was made when discussing the second question, and should be limited to the particular point that was then under consideration. It is true that when the title vests in the city for public use under proceedings taken to acquire the property, and the value to be paid for such property is to be assessed upon the adjacent property benefited, such an assessment for benefit may be said to accrue in the sense that at that time it is determined that for the taking of that property at a subsequent time an assessment will be imposed upon the property benefited ; but it was not intended to say, nor could the language fairly bear the construction, that an assessment at that time became a lien upon the property ; that its amount was then definitely ascertained, or that the condition that existed at that time determined the amount of that assessment. As a matter of fact, the amount of such assessment could not be ascertained until after the commissioners had ascertained the value of the property to

be acquired. What we said was, that when the title of the property vested in the city the liability of the adjacent property benefited by the improvement for an assessment accrued, the amount of that assessment to be determined subsequently by the proceedings authorized by the act; and this remark was made in connection with the subsequent remark, that when the same should be ascertained it should not be increased because of the fact that the city had found it inconvenient or impossible while holding the title of the property and enjoying its exclusive use to pay its price. This conclusion that we have arrived at is, we think, sustained by *Matter of Schell* (76 N. Y. 434). There the question was whether the valuation made in May, 1873, or May, 1874, was under the act of 1840 (Chap. 326), to furnish the limit of these assessments. The court held that the valuation of 1873 was to furnish the limit; that "That was the last valuation preceding these assessments. They were completed by the board of assessors, March 5, 1874, and were on that day certified to the board of revision and correction. The assessors had completed the assessments, and had no further act to perform. If they had regarded the law they would have assessed each lot for not more than $450, under the limitation imposed by the valuation of 1873. The valuation of 1874 was not then in existence, and, of course, they could not have been governed by that." This case, while sustaining the claim of the property owners, held that the last valuation preceding the assessment was the valuation which was to control.

We think the order appealed from should be reversed, with ten dollars costs and disbursements, and the report of the commissioners confirmed.

VAN BRUNT, P. J., BARRETT, RUMSEY and McLAUGHLIN, JJ., concurred.

Order reversed, with ten dollars costs and disbursements, and report of commissioners confirmed.