## In re MAYOR, ETC., OF CITY OF NEW YORK.

### In re WHITTIER ST.

(Supreme Court, Appellate Division, First Department.    December 8, 1899.)

MUNICIPAL IMPROVEMENTS—ASSESSING BENEFITS—BASIS OF VALUE.

> Under Consolidation Act (Laws 1882, c. 410) § 981, providing that commissioners for making estimates and assessments for any improvements authorized to be assessed on lands shall not assess any lands for more than one-half the value thereof, as valued by the tax commissioners, the basis of value is the last valuation of the tax commissioners preceding the time the amount of benefit is ascertained,—that is, the time of making the report; and this, without regard to the date of the commencement of the proceeding to acquire title to the lands for a street or public place, or of the appointment of the commissioners to estimate damages and assess benefits, or the vesting of title to the land in the city.

Appeal from special term, New York county.

In the matter of the application of the mayor, aldermen, and commonalty of the city of New York relative to acquiring title to lands required for opening Whittier street. From an order denying motion to confirm report of the commissioners of estimate and assessment, and sending the report back to the commissioners with a direction to limit the assessment for benefit to one-half the value of the property assessed as valued by the commissioners for the year 1896, the city appeals. Reversed.

Argued before VAN BRUNT, P. J., and BARRETT, RUMSEY, McLAUGHLIN, and INGRAHAM, JJ.

John P. Dunn, for appellant city of New York.

Tompkins McIlvaine and Chas. D. Dickey, for respondent.

John C. Shaw, for respondent estate of Paul Spofford.

INGRAHAM, J. This proceeding was commenced on August 3, 1895. The commissioners of estimate and assessment were appointed by an order of the supreme court entered on October 11, 1895. A preliminary report was filed November 20, 1897. By this report the commissioners limited the assessment to one-half of the value of the property as valued by the tax commissioners for the year 1897. The respondents upon this appeal, however, appeared before the commissioners, and objected to that assessment, upon the ground that it exceeded one-half of the value of the property as assessed for the year 1896, when the property to be taken vested in the city under the statute. Testimony was given before the commissioners from which it appeared that such assessment did exceed the assessed value of the property for the year 1896, but did not exceed the assessed value of the property for the year 1897; whereupon the commission-

ers overruled the objections, and by their final report, filed December 24, 1897, assessed the respondents for benefit in an amount exceeding one-half of the assessed value of the property as assessed for taxation for the year 1896, but not more than one-half of the value of the property as assessed for taxation for the year 1897. Upon an application to the court to confirm this final report, the court held that the commissioners of estimate and assessment should have restricted the assessment for benefit to one-half the value of the property as assessed for taxation for the year 1896, and the case was sent back to the commissioners to correct the assessment in accordance with the views of the court at special term, and from the order entered upon such application the city appealed.

By section 981 of the consolidation act (chapter 410, Laws 1882) it is provided that:

"Commissioners for making estimates and assessments for any improvements authorized by law to be assessed upon the owners or occupants of houses and lots, or improved and unimproved lands, shall in no case assess any house, lot, improved or unimproved lands more than one-half the value of such house, lot, improved or unimproved land as valued by the tax commissioners."

It is difficult to see what relation the date of the commencement of a proceeding, or the time at which the property taken under the proceeding vests in the city, has to the assessment upon the adjacent property benefited by the improvement. The institution of the proceeding and the appointment of the commissioners of estimate and assessment is to ascertain the amount that the owners of the property to be taken for public use should be paid for their property, and such a proceeding is necessary whether the property is to be paid for by the city at large or by those who are benefited by the particular improvement for which the property is to be acquired. That amount having been ascertained, in this particular proceeding it became the duty of the commissioners to assess that amount upon the property in the vicinity benefited by the improvement. These duties are prescribed by sections 970 and 973 of the consolidation act. By section 975 it is made the duty of the commissioners to report fully and separately the amount of loss and damage and benefit and advantage to each and every owner or person entitled to, or interested in, any lands so acquired for the purpose of such improvement; and by section 976 it is made the duty of the commissioners to estimate, assess, and report the value of such benefit to the owner or owners in respect to the lands benefited by the improvement, and not included within the limits of the street or public place to be opened, laid out, or extended. Thus, the duty of the commissioners as to the two classes of property is entirely distinct. They ascertain the value of the lands taken, and report separately as to each person interested in such lands, and the damage that he has sustained in consequence of the appropriation of the specific property. As to the lands not taken, but which are within the area of the estimate for benefit, they are to ascertain and report the benefit which will accrue to such property by reason of the appropriation of the property taken for the specific public use. From the nature of things, the latter estimate for benefit can only be made after the amount of the award for property taken is ascertained, and,

when the statute says that when making such an assessment for bene-
fit the commissioners shall not assess any lot or piece of land for more
than one-half the value thereof as valued by the tax commissioners,
it must necessarily speak of the time at which the amount of the bene-
fit is ascertained, i. e. at the time of making the report.    Until within
a comparatively short time, the title of lands included in such a pro-
ceeding did not vest in the city until the confirmation of the report
of the commissioners of estimate and assessment by the court.    In
relation to proceedings of this character, however, the legislature has
quite lately changed the rule by providing that the property shall
vest in the city before the confirmation of the report by the court,
but this amendment of the law had no relation to the amount of the
assessment for benefit, or the method by which the amount was to be
ascertained and the assessment levied upon each specific piece of
property benefited.    The section under consideration evidently
speaks of the time at which the commissioners by their report are to
fix the amount of the assessment to be imposed.    The language of
the statute is that the commissioners shall in no case assess any lot,
etc., more than one-half the value of such lot, etc., as valued by the
tax commissioners.    As valued when?    Not one or five years before,
but as valued at the time of their official action, the filing of the re-
port.    It would be straining the language used in this section to
make it apply to any time prior to that at which the commissioners
acted when they "assessed" the property.    It was not intended to lay
down any different rule in Re Mayor, etc., of City of New York, 40
App. Div. 452, 58 N. Y. Supp. 100.    In that case the first question pre-
sented related to the method of valuation adopted by the commission-
ers of estimate and assessment with respect to the lands assessed for
benefit, and the second to the failure to include interest in the assess-
ment for benefit.    Under the consolidation act the commissioners
were limited to one- half the value of the property so assessed as val-
ued by the tax commissioners, while under the New York charter they
were limited to one-half such value as valued by themselves.    That
proceeding was commenced some time prior to the enactment of the
New York charter, when the provisions of the consolidation act were
in force.    The decision there was put expressly upon the ground that
the proceedings were instituted, and all the valuations, whether of
property taken or of property benefited, were made, before the present
charter took effect.    Mr. Justice Barrett, delivering the opinion of
the court, said:

"The new rule laid down by the present charter is substantially in the nature
of a rule of evidence, and we think it would have governed the commissioners
had it gone into effect prior to their action under the earlier rule.    This earlier
rule had, however, been fully applied prior to the change effected by the char-
ter.    Under the earlier rule, the commissioners had taken and considered all
the testimony presented to them by the property owners and the city, and had
substantially given judgment upon that testimony, subject merely to correc-
tion for error or mistake in weighing or applying it."

Thus, in that case, if the formal action of the commissioners had
taken place after the new charter took effect, it would have been
the duty of the commissioners to have applied the rule as laid down
by the new charter, and not as laid down by section 981 of the con-

solidation act. In the case now before us, prior to the time that the commissioners formally acted in ascertaining the benefit to these respondents, the tax commissioners had valued the respondents' real estate benefited by the improvement for the purposes of taxation for the year 1897; and thus, when the commissioners came to act, they found such a value existing, and it was their duty to consider that such a valuation was the one that was to govern them in estimating the amount to be imposed as an assessment. The observation of the court at page 459, 40 App. Div., and page 105, 58 N. Y. Supp., that "the true theory of award and assessment is that, when title vests in the city for public use, the property owner's right to just compensation immediately attaches, and therewith the assessment for benefit accrues," was made when discussing the second question, and should be limited to the particular point that was then under consideration. It is true that when the title vests in the city for public use, under proceedings taken to acquire the property, the value to be paid for such property to be assessed upon the adjacent property benefited, such an assessment for benefit may be said to accrue, in the sense that at that time it is determined that for the taking of that property at a subsequent time an assessment will be imposed upon the property benefited; but it was not intended to say, nor could the language fairly bear construction, that an assessment at that time became a lien upon the property, that its amount was then definitely ascertained, or that the condition that existed at that time determined the amount of that assessment. As a matter of fact, the amount of such assessment could not be ascertained until after the commissioners had ascertained the value of the property to be acquired. What we said was that, when the title of the property vested in the city, the liability of the adjacent property benefited by the improvement for an assessment accrued, the amount of that assessment to be determined subsequently by the proceedings authorized by the act; and this remark was made in connection with the subsequent remark, that, when the same should be ascertained, it should not be increased because of the fact that the city had found it inconvenient or impossible, while holding the title of the property and enjoying its exclusive use, to pay its price. This conclusion that we have arrived at is, we think, sustained by In re Schell, 76 N. Y. 434. There, the question was whether the valuation made in May, 1873, or May, 1874, was, under the act of 1840, to furnish the limit of these assessments. The court held that the valuation of 1873 was to furnish the limit; that "that was the last valuation preceding these assessments. They were completed by the board of assessors, March 5, 1874, and were on that day certified to the board of revision and correction. The assessors had completed the assessments, and had no further act to perform. If they had regarded the law, they would have assessed each lot for not more than $450, under the limitation imposed by the valuation of 1873. The valuation of 1874 was not then in existence, and, of course, they could not have been governed by that." This case, while sustaining the claim of the property owners, held that the

last valuation preceding the assessment was the valuation which was to control.

We think the order appealed from should be reversed, with $10 costs and disbursements, and the report of the commissioners confirmed. All concur.