Matter of the Application of THE CITY OF NEW YORK Relative to Acquiring Title, etc., for the Opening and Extending of West Two Hundred and Thirty-first Street, from Bailey Avenue to Riverdale Avenue, in the Borough of The Bronx, City of New York.

(Supreme Court, New York Special Term, August, 1919.)

Condemnation proceedings — street opening assessments — time for valuation of property benefited — when motion to confirm report of commissioner of assessments denied — evidence.

The value of property assessed for benefits in a proceeding to open and extend a street must be of the date of the report of the commissioner of assessments.

Supreme Court, August, 1919.        [Vol. 108.

Where there is no satisfactory evidence of the value of the property after the improvement was completed a motion to confirm the report of the commissioner of assessments based in part thereon will be denied and the matter referred to a new commissioner.

MOTION to confirm the supplemental, amended and additional final report of the commissioner of assessment herein.

William P. Burr, corporation counsel (Joel J. Squier and Patrick S. MacDwyer, of counsel), for motion.

William L. Woodward (William L. Woodward and Robert D. Eggleston, of counsel), for objectors, opposed.

GIEGERICH, J.   This proceeding was brought for the purpose of opening and extending West Two Hundred and Thirty-first street from Bailey avenue to Riverdale avenue, in the borough of The Bronx, New York city. Original reports, including awards and assessments, were in their entirety confirmed by an order entered on December 18, 1912.   On an appeal taken by the owners of benefit parcels Nos. 145, 146 and 161 from so much of that order as confirmed the assessments on such parcels, the order appealed from, so far as it confirmed the report of the commissioner of assessment, was reversed by a divided court, and the matter was referred back to the said commissioner in accordance with the view expressed in the opinion of Mr. Justice Scott, who spoke for a majority of the court, on the ground that the commissioner had erred in refusing to receive evidence of and consider the effect of the established grade of the new street (West Two Hundred and Thirty-first street), when physically regulated and

graded, upon the abutting property. *Matter of City of New York (West 231st St.),* 160 App. Div. 472. Thereafter, by permission of the Appellate Division, the city appealed to the Court of Appeals on a certified question as to whether the commissioner of assessment had committed error in refusing to receive the said evidence, and that court answered the question in the affirmative and affirmed the order on the opinion of Scott, J., below. *Matter of City of New York (West 231st St.),* 212 N. Y. 590. The order of the Appellate Division entered on the remittitur of the Court of Appeals directed the commissioner of assessment to make a supplemental and amended report as to the assessments for benefit on said parcels 145, 146 and 161, and to make a supplemental and additional assessment as to all other benefit parcels included in the area of assessment for benefit. A rehearing of the proceeding was thereupon had before the commissioner of assessment who, according to his supplemental, amended and additional report, received " evidence as to the effect of the established grade of West Two Hundred and Thirty-first street when physically regulated and graded upon the abutting property," and that after considering such evidence he has determined the present or amended assessments on the basis of the value of the property with the street graded at the grade established therefor. The assessments on the property in suit in the former report and present report of the commissioner are as follows: Benefit parcel No. 145 — former assessment, $22,232.81; present assessment, $19,556.85. Benefit parcel No. 146 — former assessment, $323.40; present assessment, $284.48. Benefit parcel No. 161 — former assessment, $6,265.17; present assessment, $5,511.10. Total former assessments, $28,821.38. Total present assessments, $25,352.43. The city now moves for the confirmation of the said sup-

plemental, amended and additional final report of the commissioner, and the owners of benefit parcels Nos. 145, 146 and 161 appear in opposition to the motion. When the proceeding came on for a rehearing before the commissioner, West Two Hundred and Thirty-first street had already been physically opened and graded at the grade established therefor, and had been ready for use as a street since February 10, 1911. The estimates of the objectors' experts were nevertheless confined to the value of the property on October 1, 1909, when the title to the land required for the street was vested in the city. The latter, on the other hand, called a real estate expert to appraise and testify as to the value of the parcels in question with the street in actual existence. The objectors insist that the value of the property after vesting of title must be determined as of the date of the vesting of title, and consequently that error was committed in admitting in evidence the city's said estimate against their objection and exception. The objectors' counsel cite in support of such contention the opinion of the Appellate Division, delivered through Mr. Justice Scott, on the appeal above mentioned. Quoting from certain parts of that opinion, which refer to the effect of the physical opening of West Two Hundred and Thirty-first street in conformity with the profile map upon the property abutting it, the objectors' counsel advances the argument that if the Appellate Division had intended that the value of the property in question must be determined for the purpose of ascertaining benefit as of the date of the completion of the physical opening of the street, it would have so stated. It is furthermore argued that on the former hearing the property owners' experts, as well as the city's experts, made their estimates of the value of the property after the vesting of title in the city as of October 1, 1909, leaving out of

consideration the element of grade, and that, if the Appellate Division had considered this the wrong date it would undoubtedly have so indicated. The record of the former hearing, which was reviewed by the Appellate Division, discloses that questions calculated to show the value of the property after the street in question was physically opened and graded in accordance with the established grade were put to the real estate experts called by the objectors, but all such evidence was excluded upon the objection of the city's counsel. The corporation counsel, upon the argument of the appeal, contended that the proceeding being one for acquisition of title, the measure of benefit in determining the amount of assessment was the difference in value before and after the vesting of title. Mr. Justice Scott, speaking for the Appellate Division, however, said: "The benefit received naturally refers to the benefit which will accrue from the physical and actual opening of the street, for until it is physically and actually opened no benefit of any sort can come from the legal acquisition by the city of a strip of land destined to be a street." 160 App. Div. 473. And having first stated that it was the duty of the commissioner of assessment to distribute and assess the cost and expense involved in the proceeding upon the property included within the assessment area " in proportion to the amount of benefit received," pursuant to section 980 of the Greater New York Charter, as amended by chapter 658 of the Laws of 1906, and by chapter 394 of the Laws of 1909, lays down the following rule: "As a basis for such assessment it is necessary to determine the value of each lot without the improvement, and its value after the improvement has been completed. The difference shows the benefit derived." The same rule was applied in *Matter of City of New York (Thayer Street)*, 142

Supreme Court, August, 1919.          [Vol. 108.

App. Div. 721. In that proceeding the report of the commissioner of assessment was sent back to him for readjustment of the assessment for benefit in order that the court might be advised of the date taken by him for his determination of the value of the property, for, as stated in the prevailing opinion, at page 722, "if it was as of the date of the estimate for damages, we think the report must, upon this record, be sent back to the commissioner for readjustment of the assessment for benefit." That course having been followed, the commissioner of assessment reported that he valued each piece of property assessed by him as of the date of his report and that in making such valuation he took into consideration the enhancement in value of such property by reason of the improvement. In affirming the order confirming such report, the prevailing opinion of the court, after discussing the provisions of section 980 of the Greater New York Charter, as amended by Laws of 1906, chapter 658, and Laws of 1909, chapter 394, and quoting from the opinion of the court in *Matter of City of New York* (*Avenue D*), 122 App. Div. 416, 418, uses this language: "We, therefore, conclude that commissioners in determining the value of the parcels untaken must determine and fix that value on what the parcels are worth with the street extension made, and the title to the land within the street lines vested in the city of New York." The same principle was again applied in *Matter of Rapid Transit Railroad Comrs.*, 197 N. Y. 81. That proceeding was brought to acquire a perpetual right of way under certain streets in the borough of Brooklyn. The commissioners limited the experts in their estimates of value as hereinafter stated, and the court in holding that such ruling was erroneous used the following language at pages 108 and 109, viz.: "The rule of evidence adopted by the commissioners was errone-

ous. They limited the witnesses in their estimates of value to the time when it was known that the subway was an assured fact by the filing of the oaths, although the work of construction had not been commenced, and instructed them to exclude from consideration any physical damage which had actually been inflicted at the time of the trial, when the work in front of the premises in question had been substantially completed. In estimating the market value on this basis, the experts were confined to supposition and speculation, for filing a paper in a public office worked no physical change in the property, and they were not allowed to consider the realities as shown by time and experience. The test presented to them was what the market value would probably be if an intending purchaser knew that the road was to be built. This left everything open to the mere estimate of experts, not founded on fact but on conjecture. Certainty is better than conjecture and the injuries actually inflicted a better guide than the opinions of experts as to the market values just before and just after the oaths of the commissioners were filed, or during the same five minutes. The value of such evidence, always a dangerous and uncertain guide, and in this case especially so, owing to the restrictions of the commissioners, is shown by the fact that experts called by the claimants estimated the amount of the depreciation of the property just after the oaths were filed at fifty per cent of its value just before the oaths were filed, while those called by the city, apparently of equal intelligence and experience, placed it at ten per cent. We think it was the duty of the commissioners to receive evidence relating to the condition of the properties down to the time of the trial and to note the effect thereon of the work in fact done at that time. Evidence as to the physical injuries which had actually been inflicted and could be seen,

touched and measured, was competent and should have been received, as it was to some extent, and considered, as it was not to any extent." It will be perceived that the court in the matter just cited held that it was the duty of the commissioners of appraisal to receive evidence relating to the condition of the property after the vesting of title and down to the time of trial, and to note the effect of the work in fact done. Applying the principle laid down in the foregoing proceedings to the facts of the present proceeding, it is manifest that the commissioner of assessment properly received evidence of the value of the property after the improvement was completed and properly took the same into consideration with the other elements referred to in his report in fixing the value of the property assessed by him as of the date of such report. The objectors contend that the commissioner, in so valuing the property as of the date of his report, instead of October 1, 1909, the date of vesting of title in the city, committed error. The authorities, however, do not sustain such contention. On the contrary, it is well settled the value of the property assessed must be of the date of the report of the commissioner. *Matter of Mayor,* 46 App. Div. 52; affd., on opinion below, 162 N. Y. 658; *Matter of City of New York (Thayer Street), supra.* Another point urged by the objectors is that the commissioner was required to reduce the assessment of $28,821.38 upon the benefit parcels in controversy as found by him in the prior proceeding herein, to an amount not in excess of $10,098.82, which they claim is the highest competent estimate of the benefit received from the improvement. This statement as to the highest competent estimate of the benefit received refers to the testimony of one of the objectors' real estate experts, who gave an estimate of the value of the property immediately after vesting of

title in the city, taking into consideration the grade
of the street as established by the profile map.   As
already shown, neither he nor the other expert called
by the objectors based his estimate upon actual con-
ditions nor upon the value of the property '' after the
improvement had been completed,'' and such estimates
are therefore contrary to the rule laid down in the
above cited proceedings.   As stated above, the city
alone called a real estate expert who testified as to the
value of the property as of February 10, 1911, the date
upon which the street was in fact completed and
thrown open for use.   According to his estimate made
on such a basis, the total value of all the parcels in
question, at the time above mentioned, was $343,718.60,
with exclusions and grade considered, being an increase
in value over the separate estimates of each of the
other experts of the valuation of the property imme-
diately before the acquisition of title by the city, as
follows:   Over the estimate of one of the objectors'
experts, $80,697.60; over the estimate of the other
objectors' experts, $86,360.42; over the estimate of the
city's expert on the former hearing, $100,354.   I do not
think, however, that the testimony of the city's expert
who so testified upon the hearing now under review,
considered as a whole, affords any substantial basis for
determining the benefit which may have accrued to the
property in question from the improvement.   Although
examined on nine different days, extending over a
period of about three months, he either had not con-
sidered or was not prepared or was disinclined to give
an estimate of the value of the property in question at
any other time than that of the said 10th day of Feb-
ruary, 1911.   He refused to adopt the valuation which
the city's expert, who testified on the former hearing,
placed on the property immediately before the vesting
of title in the city, although he admitted during the

Supreme Court, August, 1919. [Vol. 108.

course of an extended cross-examination that there was no increase in its value·between October 1, 1909, the date of the vesting of title in the city, and February 10, 1911, the date of the physical opening of West Two Hundred and Thirty-first street. The witness testified that in arriving at the valuation so given by· him he excluded from his estimate any advantage inuring or accruing to the property from any source other than the opening of the street in question between October 1, 1909, and February 10, 1911, but that he had formed no opinion as to the value of the property, or any part thereof, without such exclusions. It is urged by the objectors' counsel that the difference in the estimate of value of the city's two experts is due to the alleged failure of the expert who testified on the hearing under review to give due consideration to or to make sufficient reduction in benefit for the grade and rock. This objection is made upon the theory that reduction should have been made for the entire cost of removing all material above grade from every foot of the property. The first answer to this objection is that there was no evidence that the best use to make of the property required the removal of all·such material from the entire area. The next answer is that even if all such material should have been removed the objectors themselves did not give evidence of cost of such removal, but only gave evidence as to the cost of such removal from a part of such area. It does not clearly appear from the record whether the witness took the cost of excavating any part of the rock into consideration in making such valuation of the property, although he admitted that such work was expensive; but irrespective of whether he did or not, it is obvious, nevertheless, that since he did not give any valuation of the property, with or without so-called exclusions, before vesting of title in the city, there is no way of fairly deter-

mining from his testimony the benefit which actually accrued from the improvement. Moreover, considering his testimony in its entirety, it is difficult to ascertain therefrom how he arrived at his valuation of the property, with exclusions, as of February 10, 1911, without having first valued it without exclusions. Without further discussing the testimony of this witness, it is sufficient to say that his opinion of the value of the property at the time he mentions is not, in view of the circumstances, entitled to any weight whatever. In this situation and since the estimate of the objectors' experts are based upon an erroneous theory there is no satisfactory evidence in the case of the value of the property after the improvement was completed. Under these circumstances, I have no alternative but to deny the motion to confirm the commissioner's report. In reaching this conclusion, I have not, of course, sustained, and, in fact, I have not considered any of the objections to the assessments for benefit filed with the commissioner by the owners of the benefit parcels in question. All that has been decided is that there is no satisfactory evidence of the value of the property after the improvement was completed and that for such reason the present motion to confirm is denied. In this view, I do not deem it necessary to pass upon the other points raised by the objections. It is assumed that upon the rehearing of the matter the parties in presenting their proofs relative to the value of the property before and after the improvement was completed will be guided by the following remarks contained at page 474 of the opinion of Mr. Justice Scott, viz.: "A certain amount is to be distributed by way of assessments over that area, each lot being assessed presumptively in proportion to the benefit it will derive from the improvement. As a basis for such assessment it is necessary to determine the value of each lot with-

Supreme Court, August, 1919.        [Vol. 108.

out the improvement and its value after the improvement has been completed. The difference shows the benefit derived. Such a comparative valuation cannot be properly made without taking into account the physical relation which the street as finally completed will bear to the property to be valued, for manifestly a lot of land abutting upon the new street at grade will be more benefited by the opening of the street than a lot which cannot be brought to grade without a large expense for excavating or filling.'' With respect to the cost of removing the rock or earth, which will be left upon the property above the grade of the new street, I think the true rule must be that the owner is entitled to have deducted the cost of such removal as would have to be made in order to render the property available for the best or most advantageous use and no more than that. For instance, in this case damage parcel 145 extends north and south from one street to another, having a depth from street to street of over 400 feet. To remove all the superimposed material to street level over the whole lot from front to rear might cost more than the entire lot would be worth when so reduced to grade. Manifestly, no owner would ever remove material to that extent. At the same time, it might be a wise thing to bring the front portion to grade, so as to make such portion available for some use, such as a retail store, which must be on the street level. It may well pay to excavate or fill for street frontage where it would be gross waste to so excavate or fill merely for a back yard. The objectors upon the hearing under review were allowed to show the cost of excavating the front 100 feet on West Two Hundred and Thirty-first street. If that was a wise course to take with the property from a real estate standpoint, they should have been allowed to follow it up with proof of the cost of grading down and making safe the

steep wall of rock and earth that would then have been created at the rear of the 100 feet excavated. It may be, and such seems to be the theory of the objectors, that the best use to make of this parcel as a whole is to bring the front 100 feet on West Two Hundred and Thirty-first street to the street grade and then to use all that remains in the rear, a plot of more than 300 feet in depth and having a frontage on West Two Hundred and Thirty-first street, as a site for a school or a hospital or for some other use which does not necessarily have to be on the street level. Upon the rehearing of the matter, if the claim is made that it is not necessary to remove all superimposed material from all portions of the property, the proof should show definitely the area of the rock and earth above the established grade which must be removed in order to make the various parts of the property available for the best uses thereof and the cost of the same and the estimated value of such parts as well as the remaining portions of the property before and after the completion of the improvement. After all the evidence upon the subject of rock and earth excavation and the estimated cost thereof has been given, the attention of the real estate experts should be called thereto and they should be asked whether they took such evidence into consideration in their estimate of the value of the property. Moreover, there should be a clear understanding between the parties whether or not the commissioner should deduct from the value of the property the sum total of the assessments levied for regulating and grading West Two Hundred and Thirty-first street, and if they reach an agreement upon that subject a sufficient note thereof should be entered upon the minutes. With the rules above stated and the foregoing suggestion to guide them the parties ought to

have no difficulty in having the matter speedily reheard and determined. My conclusion is that the motion should be denied and that the matter should be referred to a new commissioner who will be named in the order to be entered hereon, for reassessment in accordance with the views expressed in the opinion of Mr. Justice Scott and the rules hereinbefore stated.

Ordered accordingly.